THE BRUNSWICK & WESTERN RAILROAD CO. *v.* SMITH.

97   777
f127   246

Where two freight-cars, one of which was used as a station ware-
house, had been left "unchocked" and "unbraked" upon a side-
track having a slight downward grade, and upon being put in
motion by a sudden storm of wind, ran over· and killed the
railroad agent, who at the time was crossing the side-track,
holding an umbrella over himself inclined towards a blowing
rain so as to obstruct from his view the approaching cars, the
railroad company was not liable for the homicide, it appearing
that the deceased was the sole employee of the railroad at this
station, having at the time full charge of the locating of these
cars upon the side-track in question; that on this particular
occasion, they were left exactly as he directed; that he actually
knew that the car by which he was stricken had not been
"chocked" or "braked," and that it was within the scope of his
duty to know whether or not the other car (it being the ware-
house car) had also been left in this condition. If leaving the
cars without "chocking" or applying brakes to the same was,
under the circumstances, an act of negligence, it was negli-
gence attributable to the agent himself.

February 21, 1896.   Atkinson, J., being disqualified, Judge Callaway, of the
Augusta circuit, was designated to preside.

Action for damages.     Before Judge Sweat.     Glynn
superior court.     December term, 1894.

*Goodyear & Kay*, for plaintiff in error.
*Atkinson & Dunwody*, contra.

CALLAWAY, Judge.

Mrs. Smith brought suit against the Brunswick & West-
ern Railroad Company, to recover damages for the homi-
cide of her husband, J. D. Smith, who was the agent of said
railroad company at Hoboken in Pierce county.     The evi-
dence on trial of the case disclosed that J. D. Smith, the
deceased, was the agent, telegraph operator, and sole repre-
sentative of the defendant railroad company at Hoboken.
There was a side-track at the station with a slight inclined
grade.     Smith's office consisted of a stationary box-car just
beyond the side-track from the main line, and he used an
empty movable freight-car for a freight warehouse, into

which he received and from which he delivered freight. On the morning of the day on which Smith was killed, this warehouse car and another freight-car which was being loaded with charcoal were both on the inclined side-track, the coal-car with its brakes applied, and the warehouse car with its brakes off, when the engineer of Baxley, Boles & Co., whose tramroad made a Y with the Brunswick & Western side-track, with his engine, by permission of the deceased agent, moved both cars from the siding, carried the warehouse car to Baxley, Boles & Co.'s warehouse, unloaded freight from it, and then replaced said warehouse car and said coal-car on said side-track at the places designated by Smith, who signalled with his hands to the engineer where to place each car, directing the coal-car to be placed just above the public road crossing, and the warehouse car on the same side-track about three car-lengths above the coal-car, near the switch. Both cars were left unscotched and with brakes unapplied. Smith was present when the engine cut loose from the coal-car, and knew that it was left unscotched and without brakes. It is not known whether he knew that the warehouse car was left in the same condition. He gave no instructions as to scotching or applying brakes to either car. Baxley, Boles & Co. had a general permission from the authorities of the Brunswick & Western R. R. Co. to use this side-track in getting cars from its road and for the necessary switching and shifting incident thereto, but at the time Smith was killed, and for some time previous, it was never used without the express permission of Smith on each occasion, the switch-key being obtained from him whenever it was desired to so use it. It is the business of the men who operate the train to apply brakes and scotch the cars whenever necessary. About one o'clock in the day, a freight-train bound for Brunswick stopped at Hoboken, and Smith went into the cab to get some waybills. As the freight-train moved off, Smith left the cab, and started towards his office in a direct line which

lay diagonally across the side-track. Just at this time a sudden storm of wind and rain began, the wind blowing down the track from the direction in which the coal-car and warehouse car were situated. The wind and rain were blowing in Smith's face, and, to protect himself and the waybills, he raised an umbrella over himself, inclined towards the blowing rain, and this shut from his view the coal-car and the warehouse car, which, having been put in motion by the wind, were both rolling down the side-track a short distance apart; and while Smith was crossing the side-track he was knocked down by the moving coal-car and his body run over by both cars, killing him instantly. The supposition is that the wind put the warehouse car in motion, which, rolling down the side-track, struck the coal-car, and put that in motion. If the two cars had been properly "chocked" or had their brakes properly applied, the wind would not have put them in motion, or, if the coal-car had been properly "chocked," or had its brakes applied, it would not have been put in motion when struck by the moving warehouse car. Smith was in the discharge of his duties when killed. The wind-storm, while sudden and severe, could not be considered an unusual storm. The steepest grade of the side-track was between the places where the coal-car and the warehouse car were standing when put in motion by the wind. There was other evidence as to Smith's earning capacity, his age, etc. The jury returned a verdict against the railroad company for two thousand dollars. A motion for new trial was made on the usual grounds, which being refused by the court, the railroad company excepted, and brings the case to this court for review.

We cannot agree with learned counsel for the plaintiff in error in his contention that the railroad company is relieved from liability in this case because the killing of Smith was occasioned by the act of God. To excuse a common carrier from liability on this ground, it must ap-

pear that the casualty was caused by the divine agency alone, and not aided or contributed to by the negligence of the carrier. And when we consider the well known but terrible history of wild, uncontrolled cars on inclined railroad tracks, and their tendency, in obedience to the well known laws of nature, to move on slight provocation; and the fickleness of the wind, which is capable of blowing with varying force and velocity from every point of the compass in the short space of an hour, we cannot escape the conclusion that leaving these detached cars on an inclined side-track at a station, where people were liable to be crossing the track at all times, unscotched, and without brakes, was negligence. It can hardly be denied that leaving the cars as they were left in this case, without proper means to hold them stationary, constituted one of the essential causes of this accident.

But in determining the liability of the railroad company in this case, it is necessary to ascertain whether this act of leaving these cars "unscotched" and "unbraked" on an inclined side-track was the negligence of the railroad company or the negligence of the deceased agent. The railroad company is not excused for any negligence which may be justly charged to the engineer and train-hands of Baxley, Boles & Co., in leaving these cars in their dangerous condition; for it was by the railroad company's permission that they were using its tracks and moving its cars. *Chattanooga R. R.* v. *Liddell*, 85 *Ga.* 494; *Macon & Augusta R. R.* v. *Mayes*, 49 *Ga.* 355; *Central R. R.* v. *Passmore*, 90 *Ga.* 203; *Central R. R.* v. *Phinazee*, 93 *Ga.* 488.

But it is likewise well established law in this State that, in order to recover damages from a railroad company for the homicide of an employee, it must be shown that the employee was without fault or negligence, and that he did nothing to contribute to the homicide and neglected to do nothing to prevent the consequences of the negligence of others. *Central R. R.* v. *Lanier*, 83 *Ga.* 587.

The evidence discloses that, while the train crew of Baxley, Boles & Co. had a general permission from the authorities of the Brunswick & Western R. R. Co. to use this sidetrack in moving their cars, this privilege was exercised in each particular instance by the express permission and consent of the deceased agent, and, on the occasion in question, the cars were moved and placed by his direction. He was present, and indicated by signal with his hands to the engineer exactly where to place each car. He saw the engine cut loose from the coal-car, and saw the train-hands leave it without applying the brakes or scotching it; and if it was dangerous to so leave a car on an inclined side-track, he was charged with notice of the danger, and the railroad company could only receive its notice of such danger through him, as he was its only representative on the ground. Whether it was his duty to have had the car scotched or not, he knew the danger, and ordinary prudence on his part required that he should either have had the car made fast and safe or else keep out of its path. It is not disclosed by the evidence whether Smith actually knew that the warehouse car was left "unchocked" and without brakes, but this car was his warehouse, where he received, delivered and stored his freight. It was a movable warehouse with an inclined foundation. It was his duty to know the stability of its position, and it was placed by his express direction at or near the steepest grade of the side-track; so whether he actually knew its dangerous condition or not, it was his failure to perform his duty which made it dangerous, and this, as we have seen, relieves the railroad company from liability. It follows that the judgment refusing a new trial in this case must be                              *Reversed.*