The Central Railroad and Banking Co. *v.* Lanier.

1. The servant of a railroad company injured by the negligence of fellow-servants must, to recover damages from the company, show that he was in the exercise of ordinary care and diligence and without fault or negligence; that he did nothing to contribute to his injury, and neglected to do nothing to prevent the consequence of the negligence of the other servants.
2-6. Exceptions to the charge of the court overruled.

| 83 | 587 |
| 97 | 780 |
| 83 | 587 |
| 103 | 826 |
| 83 | 587 |
| 120 | 94 |

7. The declaration not complaining of mental suffering, reference to it in the charge was not required; but deformity produced by the injury complained of must have produced mental suffering.

8. The exercise of the discretion of the trial court in granting a new trial upon a verdict for extremely large damages is proper; but a new trial is not here required.

November 4, 1889.

Railroads. Negligence. Words and phrases. Charge of court. Damages. Verdict. New trial. Before Judge VAN EPPS. City court of Atlanta. June term, 1889.

B. F. Lanier sued the railroad company for damages in crushing his left hand between two car bumpers while he was making a coupling, causing the loss of his second and third fingers and injury to his first. The evidence showed that he was defendant's car-coupler, and was making a coupling of the rear car of a train, consisting of a switch-engine and four or five cars, to a stationary car. The crew of the train consisted of himself, the yard-conductor, the switchman, the helper and the engineer and fireman. The helper was not present as a witness at the trial, and seems to have gone away previously. The testimony consisted of that of the plaintiff and the switchman in his behalf, against that of the yard-conductor, engineer and fireman on behalf of the company. It appears that the latter three witnesses were in the company's employment at the time of the trial, while the switchman had quit and taken a higher position with another railroad. The testimony upon the main points was conflicting, the plaintiff and his witness testifying that as the engine backed the cars towards the stationary car, plaintiff gave a stop-signal, and the train stopped still, with the last car two or three feet from the stationary car; that plaintiff then stepped in between to arrange the coupling-pin and link, when suddenly, before he could do so and be ready for the cars to come the remainder

of the distance, they were shoved by the engine upon him, catching his hand between the bumpers. On the contrary, the testimony of defendant's witnesses tends to show that there was no complete stop of the train and no stop-signal given, but it was moving back very slowly, not over two miles an hour, and that the plaintiff made the coupling and came out. The testimony for plaintiff tended to show that he had been engaged in railroading nine or ten years, and had worked as train-hand, yard-conductor, yard-master, fireman and brakeman; that he was receiving $45 per month at the time of the injury; that he removed his hand from between the couplers with difficulty after it was caught, and afterwards had to have it operated on twice, suffering great pain, etc.; that his capacity for using this hand in his business was materially diminished; that he noticed, when he went between the cars, that the bumper was low down, and he found he could not get the link out, and would have either to change it or raise the draw-bar up, the link being bent; that he lifted it with his left hand and just then the cars came together, and he heard the yard-conductor say, with an oath, "Shove them in to clear the main track"; that it was the low drawhead which he attempted to lift up; that he gave no signal to start the car again and could not do so until he stepped outside, nor did he notify any one else to give such signal, and received no notice that the train was going to start, but thought it would stand still until he was prepared; that he was 32 years old; that he could not afterwards do the work of a car-coupler; that he subsequently got a position on another railroad as yard-conductor at $70 per month, but the disability of his hand interfered very much with his work and was a great disadvantage for him in railroading; that the injury occurred about 10 o'clock at night, and each member of the crew had a lamp; that

the switchman was up near or a little ahead of the engine; that after the train stopped, the plaintiff, with his lantern, disappeared between the cars, it being his duty to make the coupling; that just afterwards, the yard-conductor gave the signal to come ahead, and repeated the words already stated, saying that the passenger-train was about due; and that this signal was repeated to the engineer by the switchman, and the cars were shoved ahead.

The defendant's testimony was to the effect that the injury happened about 8:30 o'clock in the evening; that the yard-conductor did not use the words attributed to him; that it was customary to slow the engine down, raise the lamp and let him come right up, and plaintiff gave the engineer the signal to hold on, held up his lamp a car-length's signal and slowed him up, signifying that he had to come ahead slowly until he hit the car; that plaintiff did not give a stop-signal; and that after the coupling was made, the cars were pushed in to clear the track, and the passenger-train came in just behind. Mortality tables, found in 70 *Ga. Rep.*, were introduced in evidence. It was agreed that plaintiff worked eleven days in August, all of September, some of November, and went to work regularly in December, 1888. He was injured in January.

The jury found for plaintiff $4,000. The defendant moved for a new trial on the grounds that the verdict was contrary to law and evidence and excessive, and on the grounds stated in the opinion. The motion was overruled, and exception was taken.

CALHOUN, KING & SPALDING, for plaintiff in error.

HOKE & BURTON SMITH, *contra*.

BLANDFORD, Justice.

A verdict was had for the plaintiff; a motion for a new trial was made by the defendant, which was overruled, and the defendant excepted.

1. The main ground of complaint is the 6th, which is that the court charged as follows: "The jury is instructed that the foundation proposition which underlies all suits in favor of an employé against a railroad company for personal injuries sustained in the discharge of his duty is this: 'To make a *prima facie* case for recovery, the railroad employé suing the company for personal injuries arising from an act in which he participated, must prove either that he was not to blame or that the company was.' The company, in replying, may defend successfully by disproving either proposition, that is, by showing either that the plaintiff was to blame or that the company was not. By blame, I mean the want of due diligence. The measure of diligence which the law imposes on railroad companies in reference to employés, and on the conduct of employés in reference to their companies, is ordinary diligence or common prudence."

Section 3036 of the code authorizes an employé to recover from a railroad company for injuries he sustains by reason of the negligence of other employés, when he is without fault or negligence. "Without fault" means, that the party suing must not have done anything to contribute to his injury, or must have done everything to prevent the consequences of the company's negligence. In other words, he must show that he did nothing he ought not to have done, and neglected to do nothing he ought to have done. Under this clause of the code, we think this is the clear meaning of "without fault or negligence." The rule of diligence to be exercised is ordinary diligence, as we find in all the books which we have been able to consult. The company owed to him only ordinary diligence, and he owed to the company the same diligence. At the same time, while his conduct must come up to the rule of ordinary care and diligence, it must appear

that he was without fault or negligence. This we understand the court to have charged substantially in the portion of the charge excepted to in this ground. As has been decided by this court, it must have shown, presumptively or otherwise, where an action is brought by an employé for the negligence of another employé, that the plaintiff did not contribute substantially to the injury which he received.

2. The 7th ground complains that the court erred in charging that "by blame is meant the want of due diligence. The measures of diligence which the law imposes on railroad companies in reference to employés, and on the conduct of employés in reference to their companies, is ordinary diligence or common prudence." Taken in connection with the whole charge of the court, we think this charge is correct. The construction of the phrase ordinary diligence is, of course, to be in reference to that diligence required of employés, and to that due from passengers or others, respectively, according to the class of persons whose conduct is under consideration.

3. The 8th ground complains that the court erred in charging: "It is also a principle of law that an employé suing a railroad company must be free from fault, and if an injury is sustained by him in consequence of any fault or negligence on his part, he cannot recover. To recover, he must have been blameless." The exception taken to this charge is, that the court did not further define to the jury what he meant by the word "blameless," having already instructed them as set forth in the 6th ground of the motion, that by the word "blame" he meant the "want of ordinary diligence." We do not think there is anything in this exception. Fault is a big word; and it is one easily comprehended by the jury. It means that nothing should have been done that ought not to have been done by the party

complaining, and that he should not have omitted anything that ought to have been done. The word "negligence" in this section of the code is merely superadded. It adds no strength, vigor or impressiveness to the word "fault."

4. The 9th ground complains that the court erred in charging: "To sum up these instructions, if you find that defendant was not negligent, or if it was, that the plaintiff was also negligent, or could have avoided the injury by the exercise of ordinary care and diligence, your verdict will be for the defendant." This exception is wholly without merit.

5. The 10th ground complains that the court erred in charging: "If you believe from the evidence that it was the plaintiff's duty to go between the cars to make a coupling, and that before going in he gave the proper signal to the engineer to stop, and that the engineer stopped when the cars were close together, and that the plaintiff went in there while the cars were stationary to adjust a pin or link with a view to making a coupling, and that while thus employed, the engineer caused the cars to come together without any notice to the plaintiff, and without the plaintiff's giving him any notice or signal to do so, and that this was negligence on the part of the defendant's servants thus to cause or suffer the cars to come together, and that the plaintiff was injured thereby, he would be entitled to recover in this action, provided he could not, by the exercise of ordinary care, have avoided the consequences to himself of this negligence, and provided he was not himself guilty of any contributory fault in the act resulting in his injury." We think this charge was law and applicable to this case.

6. The error alleged in the 11th ground is, that the court charged: "If the accident resulted from the negligent moving of the train in the manner charged in the

declaration, while he was endeavoring in the line of his duty to lift or put in shape the bumper, then the fact, if it be a fact, that the bumper was defective would not bar his recovery." We see no error in this charge of the court.

7. The 12th ground complains that the court charged the jury as follows: " The plaintiff, if entitled to recover, would be entitled to compensation for the mental and physical suffering which he endured or may yet undergo from this cause."

While we think it would have been better for the court to have said nothing about the mental suffering of the plaintiff, inasmuch as there is no complaint in the plaintiff's declaration as to any mental suffering, yet we find it alleged therein that the plaintiff was, by the injury he had received, deformed; and this deformity must of necessity have produced not only physical pain, but mental anguish.

8. Another ground insisted upon strongly by the plaintiff in error is, that the court erred in not granting a new trial because the damages in this case were excessive. The damages, it is true, are quite large; they go to the extreme limit, if indeed not beyond it; and in all such cases as this, the exercise by the courts trying the cases of their discretion to grant a new trial, would, it seems to us, be eminently proper. While this court rarely ever interferes with the discretion of the court below in granting a new trial or refusing to grant a new trial on the ground of excessive damages, yet this court has the power so to do, and will not fail to exercise it in a proper case. If parties wish to hold their verdict in actions of this character, they should see to it that the verdicts are reasonable, and not such as to shock the moral sense. But we do not grant a new trial in this case, although strongly tempted to do so on account of this verdict.    *Judgment affirmed.*