[Civ. No. 4473.    Second Appellate District, Division Two.—June 24, 1926.]

## GEORGE C. MARSTON, Respondent, v. PICKWICK STAGES, INC. (a Corporation), et al., Appellants.

[1] Appeal—Personal Injuries—Order Denying New Trial—Dismissal.—In an action for damages for personal injuries, an appeal from an order denying a motion for a new trial will be dismissed, as no appeal lies from such an order.

[2] Negligence—Collision Between Automobile and Autostage—Verdict—Evidence.—In this action to recover damages for personal injuries arising out of a collision between an automobile driven by plaintiff and an autostage, the evidence was sufficient to justify the verdict in favor of plaintiff.

---

1. See 2 Cal. Jur. 175.

[3] ID.—VERDICT—EVIDENCE—APPEAL.—An appellate court will never disturb a verdict where there is some substantial evidence to support it.

[4] ID.—CONTRIBUTORY NEGLIGENCE—INSTRUCTION.—In such action, the trial court did not err in refusing to instruct the jury that plaintiff was guilty of contributory negligence.

[5] ID.—ABSENCE OF FACTS REFERRED TO IN GIVEN INSTRUCTIONS—REVERSIBLE ERROR NOT SHOWN.—In such action, if it be conceded that it was improper to give an instruction to the effect that "two vehicles while passing each other in opposite directions have the right-of-way, and no other vehicle to the rear of either of such vehicles must pass or attempt to pass such vehicles" and another instruction to the effect that "it is unlawful to operate or drive an automobile on a public highway in excess of thirty miles an hour when the operator or driver does not have a clear and uninterrupted view of the highway on which he is traveling in the direction toward which he is traveling for at least four hundred feet ahead of such operator or driver," because there was no evidence of the facts referred to in such instructions, nevertheless the giving of them was not reversible error.

[6] ID.—INAPPLICABILITY OF ABSTRACT QUESTIONS OF LAW TO CASE—INSTRUCTIONS—ABSENCE OF INJURY.—While it is true that the court should not instruct the jury upon abstract questions of law not applicable to the circumstances of the case, nevertheless such action on the part of the trial court will not warrant a reversal where it is apparent that no injury could have resulted.

[7] ID. — CONTRIBUTORY NEGLIGENCE — INSTRUCTION. — In such action, where the jury was instructed to find for the plaintiff if the accident was proximately caused by negligence on the part of the driver of the stage and if "plaintiff was without fault," defendants' objection that the words "without fault" are not equivalent to an instruction upon the issue of contributory negligence, is hypercritical and without merit, where in other parts of its charge the court fully and correctly instructed the jury upon the question of contributory negligence, and moreover, in the literature of the law the word "fault" is the equivalent of "negligence."

[8] ID.—SOUNDING HORN—WARNING OF DANGER—INSTRUCTIONS.—In such action, the trial court rightfully refused to give an instruction which, after properly stating that every person operating a motor vehicle shall sound his horn when necessary as a warning of danger, purported to settle the conditions which created the necessity for the sounding of the horn, instead of leaving it to the jury to

3. See 2 Cal. Jur. 919; 2 R. C. L. 194.

6. See 24 Cal. Jur. 828.

determine whether the sounding of the horn was or was not necessary as a warning of danger.

[9] Id.—Proper Refusal of Instruction.—In such action, the trial court properly refused to give a requested instruction which, had it been given, would have charged the jury, in substance and effect, that if plaintiff was negligent, and if his negligence proximately contributed to his negligence, he could not recover.

---

(1) 3 C. J., p. 507, n. 61.　(2) 28 Cyc., p. 47, n. 20.　(3) 4 C. J., p. 853, n. 59, 60; 23 C. J., p. 38, n. 26.　(4) 38 Cyc., p. 1619, n. 38. (5) 4 C. J., p. 1034, n. 39, p. 1035, n. 40.　(6) 4 C. J., p. 1033, n. 37; 38 Cyc., p. 1672, n. 27, p. 1778, n. 73, p. 1779, n. 75, 76.　(7) 25 C. J., p. 676, n. 34; 28 Cyc., p. 49, n. 49; 38 Cyc., p. 1785, n. 90. (8) 28 Cyc., p. 49, n. 46; 29 Cyc., p. 630, n. 47.　(9) 28 Cyc., p. 49, n. 49; 38 Cyc., p. 1602, n. 58, p. 1711, n. 19.

APPEAL from a judgment of the Superior Court of San Diego County. W. P. Cary, Judge. Affirmed.

The facts are stated in the opinion of the court.

Warren E. Libby, E. L. Seavey and B. P. Gibbs for Appellants.

Charles C. Crouch, Glen H. Munkelt and Frank A. Gazlay for Respondent.

FINLAYSON, P. J.—This is an action to recover damages for personal injuries arising out of a collision between an automobile driven by plaintiff and an autostage operated in the business of the defendant Pickwick Stages, Inc., and driven by its employee, the defendant Vallad. The answer of each defendant, in addition to denying the allegations of the complaint, pleads contributory negligence as an affirmative defense. The verdict was for plaintiff. [1] Defendants appeal from the judgment and from an order denying their motion for a new trial. The latter appeal must be dismissed. No appeal lies from an order denying a new trial. (Code Civ. Proc., sec. 963.) As grounds for reversal appellants urge that the evidence is insufficient to justify the verdict, that the court erred in giving certain instructions, and that it further erred in refusing certain requested instructions.

The accident in which plaintiff received his injuries occurred during the daytime, on the state highway, within the limits of the city of San Diego. The highway at the place where the collision occurred is twenty feet wide and paved. Plaintiff, driving a Ford automobile, was traveling in a northerly direction. The autostage was proceeding in the opposite direction. A cloud of smoke, caused by the burning of grass or brush along the railroad tracks to the west, swept across the highway and obscured the view of the respective drivers as they were about to pass each other. Each driver claims that the other was on the wrong side of the road. Without doubt the presence of one or the other of the vehicles on the left or wrong side of the road was the proximate cause of the accident. By its verdict the jury impliedly found that plaintiff's car was on the right side and that the autostage was on the wrong side of the highway.

Plaintiff testified that the cloud of smoke was from seventy-five to one hundred feet wide; that he first observed it when he was about half a mile away; that he was then traveling at a speed of about twenty-five miles an hour; that as he approached the smoke he decreased the speed of his car until it was proceeding at about fifteen miles an hour; that as he was about to enter the pall of smoke, and when about a rod away from it, he saw the autostage fifty feet ahead, coming diagonally toward him, his car being at the time on the right side of the pavement; that as soon as he saw the autostage he made an effort to turn his car still farther toward the right, but that before he could leave the paved highway the autostage struck his vehicle with terrific force, wrecking it and causing the personal injuries of which he complains.

The driver of the autostage, whose testimony was corroborated by that of some of his passengers, testified that as his vehicle entered the cloud of smoke it was on the right or west side of the paved highway, proceeding at a speed of about twenty miles an hour; that after getting into the smoke he decreased the speed of the autostage, so that when the collision occurred it was traveling at about eight or ten miles an hour; that the wheels on the right side of the stage were within six or eight inches of the edge of the pavement, on the westerly side of the highway; that he did

not change his course from the time he entered the smoke screen up to the instant of the collision; that as he entered the thick smoke he saw plaintiff's car for the first time, the distance separating the two vehicles being then about half the length of the autostage, which is fifteen feet long; that instantly the impact came, and that he had no time to do anything; that the front left wheel of the autostage was broken by the collision and the drag link was bent—the latter piece of mechanism being a rod running from the steering-gear to the spindle-pin and controlling the front wheels; that by reason of the nature of these injuries he was unable to steer the stage after the impact, and that the vehicle dropped down on the spindle-pin, dragged for a few feet and then turned toward the left, proceeding thus for about thirty-nine feet, when it came to a stop. There was some evidence to warrant the inference that neither driver sounded his horn before the collision.

There was observed after the accident a curved mark, graved in the pavement of the highway by the spindle-pin of the autostage. The northerly end of this mark, i. e., the place where it commenced, was about six feet two inches east of the westerly edge of the pavement. One witness testified that the mark, from the point of its beginning, "starts a little bit, pointing in toward the east," that it then straightens out and continues thus for about six feet, when it disappears for a space and then reappears as a diagonal mark across the pavement from the west side of the place where the stage came to a stop on the east side.

A witness for the plaintiff, who was driving an automobile in the same direction that plaintiff was traveling and who was about 250 feet to the rear of plaintiff's car when the collision occurred, testified that he saw the accident and that after hitting the Ford the autostage traveled five or six yards before its left front wheel came off.

The foregoing résumé discloses a sharp conflict in the evidence upon the vital question in the case, namely the question as to which vehicle was on the wrong side of the highway.

[2] We think the evidence was sufficient to justify the conclusion of the jury. [3] An appellate court will never disturb a verdict where there is some substantial evidence to

support it.   But appellants claim that respondent's testimony is conclusively demonstrated to be false and impossible by the marks which were made upon the pavement by the spindle-pin of the autostage.   This mute testimony, say appellants, shows "unmistakably and conclusively that the stage was upon the west side of the road at the time of the collision" and that respondent's testimony is impossible "in the face of these telltale marks."   There would be much force in this contention if a witness for respondent had not testified that the autostage traveled some five or six yards before its wheel came off; for the most positive testimony may be rejected as inherently improbable when its falsity appears from a consideration of the undisputed circumstances or from the laws of nature.   But until the wheel came off the axle, thus permitting the left front end of the stage to drop, the spindle-pin did not touch the pavement.   Until then no mark was made to tell the course of the stage whilst traversing the five or six yards.   It is quite possible that while the stage was covering this space of fifteen or eighteen feet it swerved over to the right side of the highway immediately after hitting the Ford and while it was still traveling on all of its four wheels.   This possibility affords a conceivable explanation for the fact that the commencement of the mark made by the spindle-pin was found to be on the right or west side of the highway.   If this is what happened, and it is not impossible, then there is no necessary inconsistency between the mark as it appeared on the pavement and respondent's testimony that when he saw the autostage an instant before the collision it was coming diagonally toward his vehicle on the east side of the highway.   What was said by this court in *Austin* v. *Newton,* 46 Cal. App. 498 [189 Pac. 473] is pertinent: "Common experience and observation teach us that strange and astonishing things sometimes happen in the world of physical phenomena, and accidents sometimes appear to happen in manner unaccountable.   For these reasons an appellate court must be careful not to give to dogmatic and undemonstrated conclusions respecting natural laws precedence over the testimony of apparently credible witnesses; and the mere fact that the admitted circumstances make the story of the witnesses seem improbable will not justify a reversal by an appellate tribunal upon the ground that the verdict is con-

trary to the evidence. (*Stokes* v. *Metropolitan Street Ry. Co.*, 173 Mo. App. 676 [160 S. W. 46].)''

[4] What we have said disposes of appellants' next contention, which is that the court erred in refusing to instruct the jury that respondent was guilty of contributory negligence.

[5] The court gave an instruction practically in the language of section 20 of the Motor Vehicle Act (Stats. 1919, p. 215). The instruction reads, in part, as follows: ''The court instructs you that the driver or operator of any vehicle in or upon any public highway must drive or operate such vehicle in a careful manner with due regard for the safety and convenience of all other vehicles upon such highway, and wherever practicable shall travel on the right hand side of such highway. Two vehicles while passing each other in opposite directions have the right of way, *and no other vehicle to the rear of either of such vehicles must pass or attempt to pass such vehicles.*'' We have italicized that part of the instruction to which appellants object. The court also gave another instruction substantially in the language of section 22 of the same act, which told the jury that ''it is unlawful to operate or drive an automobile on a public highway in excess of thirty miles an hour when the operator or driver does not have a clear and uninterrupted view of the highway on which he is traveling in the direction toward which he is traveling for at least four hundred feet ahead of such operator or driver.'' Appellants do not question the correctness of either of these instructions as statements of abstract propositions of law, but claim that both of them were improper for the reason that they refer to facts of which there was no evidence. It is claimed that it was error to give the first of these instructions because there was no evidence that either the stage or the Ford was attempting to pass any vehicle just before the collision, and that it was error to give the other instruction because there is no evidence that the stage was traveling in excess of thirty miles an hour. If it be conceded that it was improper to give these instructions for the reasons assigned by appellants, nevertheless the giving of them is not reversible error.

[6] While it unquestionably is true that the court should not instruct the jury upon abstract questions of law not applicable to the circumstances of the case, nevertheless such

action on the part of the trial court will not warrant a reversal where it is apparent that no injury could have resulted. (*Bosqui* v. *Sutro R. R. Co.*, 131 Cal. 390, 401 [63 Pac. 682]; *People* v. *Romero*, 143 Cal. 458 [77 Pac. 163]; *Hardy* v. *Schirmer*, 163 Cal. 272 [124 Pac. 993]; *George* v. *Los Angeles Ry. Co.*, 126 Cal. 357 [77 Am. St. Rep. 184, 46 L. R. A. 829, 58 Pac. 819]; *Estate of Clark*, 180 Cal. 395 [181 Pac. 639].) We are unable to see how either of the instructions now under consideration could have prejudiced appellants' cause. In *Bosqui* v. *Sutro R. R. Co.*, *supra*, the court, speaking of an instruction which referred to facts not shown by the evidence, said: ''In *People* v. *Cochran*, 61 Cal. 548, it was said: 'If an instruction in a case is asked which refers to facts which there is no evidence to prove, it is not error to refuse to give it, and if given, although in fact erroneous in the abstract, it will not be regarded as an error for which the judgment will be reversed, unless it be manifest that the jury was misled by it to the prejudice of the defendant. Presumptively, however, an erroneous proposition of law, referring in no way to the evidence in the case submitted to the jury, has not prejudiced the defendant.' If this latter statement be true, surely a correct proposition of law under like circumstances would not necessarily mislead the jury. In the present case there was not the slightest evidence or suspicion pointing to the defendant as having placed the obstruction on the rails, and we do not think the instruction assumes that any such evidence existed. We do not believe that the reference made to defendant in that connection could, in view of the evidence in the case, have made the slightest impression on the jury to defendant's prejudice.''

An excerpt from another of the court's instructions is made the subject of attack by appellants upon the ground that it assumes negligence on the part of the driver of the stage. When the whole charge is read and considered in its entirety, as it should be, the objection now made to the isolated passage selected by appellants for their criticism is found to be baseless.

[7] The court instructed the jury to find for the plaintiff if the accident was proximately caused by negligence on the part of the driver of the stage and if ''plaintiff was without fault.'' It is objected that the words ''without

fault'' are not equivalent to an instruction upon the issue of contributory negligence. In other parts of its charge the court fully and correctly instructed the jury upon the question of contributory negligence. Moreover, in the literature of the law the word ''fault'' is the equivalent of ''negligence.'' (*Louisville etc. R. Co.* v. *Berry*, 2 Ind. App. 427 [28 N. E. 714]; *Central R. & Banking Co.* v. *Lanier*, 83 Ga. 587 [10 S. E. 279]; 25 C. J. 676.) The objection is hypercritical and without merit.

[8] Complaint is made of the court's refusal to give a requested instruction which, in part, is as follows: '' . . . every motor vehicle shall be equipped with a bell, gong, horn, whistle or other device in good working order capable of emitting an abrupt sound adequate in quality and volume to give warning of the approach of such vehicle to pedestrians and other riders or drivers of other vehicles on the highway. Every person operating a motor vehicle shall sound said bell, gong, horn or whistle or other device whenever necessary as a warning of danger. Therefore, in this case, if you find from the evidence that there was a cloud of smoke covering the highway on which the plaintiff was driving at the time and place of the collision, making it impossible for the plaintiff then and there to see any object on the highway ahead of his machine for a distance of 400 feet or in any manner whatever interfering with the vision of the plaintiff so that he did not have a clear and unobstructed view of the highway ahead of him in the direction in which he was traveling, and if you further find that the plaintiff at the time and place where this cloud of smoke was overhanging the highway, failed to sound any bell, gong or horn, to warn others using the highway of the approach of his car, then I charge you that under the circumstances and conditions then and there existing the plaintiff was guilty of negligence . . . ''

The first part of the above-quoted portion of this instruction is a correct statement of the law. It is substantially in the language of section 12 of the Motor Vehicle Act as it read at the time of the accident. (Stats. 1915, p. 405.) That section of the act provides that every person operating a motor vehicle shall sound his bell, horn, gong, or other device ''whenever necessary as a warning of danger.'' But though it would have been proper to give this part of the

instruction, it would have been error to give the instruction with its concluding sentence. Had the instruction been given, the last part of it would have erroneously charged the jury, as a matter of law, that under the circumstances referred to by the court it was necessary to sound the horn as a warning of danger, and that a failure to do so constituted negligence *per se.* In other words, the concluding part of the instruction purports to settle the conditions which create the necessity for the sounding of the horn, instead of leaving it to the jury to determine whether, under the circumstances referred to, the sounding of the horn was or was not necessary as a warning of danger. We think that in all such cases it is for the jury, and not for the court, to say whether under a given set of circumstances, a necessity exists for this precautionary act. The circumstances which will make it necessary to sound the horn "as a warning of danger" cannot be defined and measured by any precise standard. As in all cases where the question of negligence is presented, the existence of a necessity for sounding the warning horn is always relative to the particular facts and circumstances of which the necessity is sought to be predicated. For this reason it is a question of fact for the jury, even where the circumstances are undisputed, if reasonable minds can rationally draw different conclusions from the conceded facts. In *Rush* v. *Lagomarsino,* 196 Cal. 308 [237 Pac. 1066], the supreme court, speaking of an instruction which was properly drawn—for there the instruction left it to the jury to determine whether the blowing of the horn was necessary—said: " . . . it was certainly a matter for the jury to determine whether or not under all the circumstances it was necessary for the defendant to sound his horn as a warning of danger, and the failure to submit that question to the jury as requested was error which doubtless redounded to the prejudice of the plaintiff." In the instant case the court, had the instruction been given, would have undertaken to determine the question of necessity for the jury. The instruction was properly refused.

[9] Appellants complain of the court's refusal to give an instruction requested by them which, if given, would have told the jury that if plaintiff was negligent, and if his negligence contributed proximately and directly "to the

*cause* of the accident," he cannot recover. Negligence of one party or the other, was the proximate cause of the accident. Therefore the instruction, had it been given, would have charged the jury, in substance and effect, that if plaintiff was negligent, and if his negligence proximately contributed to his negligence, he could not recover. This manifestly is absurd, and the learned trial judge clearly was warranted in refusing to give an instruction so incorrectly phrased. It was calculated to make "confusion worse confounded."

Complaint is made of the refusal to give other instructions requested by appellants. An inspection of the records discloses that the subject matter of these instructions is substantially incorporated in those which were given, and that the jury was fully instructed as to all matters of law necessary for their enlightenment in determining the rights of the parties.

The appeal from the order denying a new trial is dismissed. The judgment is affirmed.

Works, J., and Craig, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 23, 1926.