[Civ. No. 5522. First Appellate District, Division Two.—March 11, 1927.]

THOMAS OSBORNE WRIGHT (a Minor), etc., Respondent, v. SALZBERGER & SONS et al., Defendants; ROBERT SALZBERGER, Appellant.

[1] NEGLIGENCE — COLLISION BETWEEN AUTOMOBILE AND CHILD'S COASTER — PLACE OF COLLISION — HIGHWAYS — EVIDENCE. — In an action for damages for personal injuries sustained by a child in a collision between an automobile and a coaster operated by the child and another, a statement by the operator of the automobile that the collision took place on the right side of the street within two

feet of the center was solely the conclusion of the witness, where the middle of the street was not marked and the witness failed to give any testimony laying a foundation for the statement.

[2] ID.—SEPARATE TRIALS—STIPULATIONS—APPEAL.—In such action, conceding for the purposes of this decision only that the trial court erred in proceeding over defendants' objection to try the child's action separately after the parties had stipulated that it be consolidated with an action brought by the father, the judgment will not be reversed, in the absence of a showing that the error was prejudicial.

[3] ID.—INSTRUCTIONS — SOUNDING OF HORN — EVIDENCE — APPEAL. — In such action, an instruction regarding the automobile driver's duty to sound his horn on entering a dark zone on the street, if objectionable, was not ground for reversal, where no evidence was introduced regarding the sounding of the horn.

[4] ID.—MEASURE OF DAMAGES—VERDICT.—In an action for injuries from negligence, although no definite measure of damages is prescribed by law, damages are recoverable under sections 3281, 3282, 3333, and 3359 of the Civil Code, the amount being left to the discretion of the jury.

[5] ID. — INSTRUCTIONS — CONTRIBUTORY NEGLIGENCE — ABSENCE OF SHOWING OF PREJUDICE.—In such an action, an instruction that before plaintiff could recover it must first appear that defendant was guilty of negligence contributing to the accident, and that it must appear plaintiff was without fault which may in anywise have contributed to the accident, though improperly worded, is not ground for reversal, in the absence of showing of prejudice.

[6] ID.—FAILURE TO KEEP LOOKOUT FOR TRAFFIC—DUTY OF AUTOMOBILE DRIVER—INSTRUCTIONS—EVIDENCE.—In such action, an instruction that it was the duty of the driver of the automobile to keep a lookout ahead for other traffic on the street and that if his failure to do so was the proximate cause of the injury the verdict of the jury must be for plaintiff, although containing no reservation regarding the defense of contributory negligence, was not ground for reversal, where not relevant to evidence introduced at the trial.

[7] ID.—PROXIMATE CAUSE—MINORS—CONTRIBUTORY NEGLIGENCE.—INSTRUCTIONS.—In such action, an instruction that if the jury found

---

2. See 24 Cal. Jur. 729; 23 R. C. L. 1012.

4. Measure of recovery for personal injuries, note, Ann. Cas. 1913A, 1361. See, also, 8 Cal. Jur. 808; 8 R. C. L. 465.

7. Contributory negligence of children, when does not preclude recovery for injuries, note, 55 Am. Rep. 864. Contributory negligence of children, notes, 1 Ann. Cas. 895; 17 Ann. Cas. 353; Ann. Cas. 1913A, 117; Ann. Cas. 1913B, 969. See, also, 20 R. C. L. 124.

that negligence was the proximate cause of the injury, the injured person may recover, and that negligence is not to be imputed to the child or deprive him of a verdict, was not subject to the objection that it in effect directed a verdict in favor of plaintiff without taking into consideration the defense of contributory negligence.

[8] ID.—SPEED—CLOSELY BUILT UP NEIGHBORHOOD—SIGN POSTING—EVIDENCE—INSTRUCTIONS.—In such action, where it was shown by the evidence that the accident occurred in a closely built up neighborhood, the trial court did not err in instructing the jury that if defendant failed to limit the speed of his automobile to twenty miles an hour in closely built up territory, as required by section 22a of the Motor Vehicle Act (Stats. 1917, pp. 382, 404), he was guilty of negligence, although there was no evidence of "sign posting" as required by the statute.

[9] ID.—SPEED LIMIT—PROPER REFUSAL OF INSTRUCTIONS.—In such action, the trial court did not err in refusing a requested instruction that at the time and place of the accident defendant was allowed to drive thirty miles per hour, where the territory was a closely built up neighborhood in which speed was limited to twenty miles an hour under section 22a of the Motor Vehicle Act (Stats. 1917, pp. 382, 404).

[10] ID. — DUTY OF AUTOMOBILE DRIVER TO KEEP VEHICLE UNDER CONTROL—QUESTION OF FACT—INSTRUCTIONS.—In such action, an instruction which stated the duty of a driver to keep his motor vehicle under control was not a charge on a question of fact, argumentative, misleading, and unfair.

[11] ID.—CONTRIBUTORY NEGLIGENCE — PRESUMPTIONS — INSTRUCTIONS. In such action, an instruction that the defense of contributory negligence presupposes the existence of negligence on the part of defendant himself was not ground for reversal as misleading the jury.

[12] ID.—ORDINANCES — SEGREGATION BY COURT — INSTRUCTIONS.—In such action, the refusal of the trial court to read as part of its instructions certain ordinances and parts of ordinances was not error, where parts already had been read and where the reading of the ordinances was requested without segregating the portions desired to be read from the mass of material presented.

[13] ID.—MUNICIPAL CORPORATIONS—CITY OF BERKELEY—ORDINANCE REQUIRING VEHICLES TO CARRY LIGHTS—CHILD'S COASTER—STATUTORY CONSTRUCTION.—An ordinance of the city of Berkeley requiring every motorcycle or "vehicle" while on the public highway

11. Contributory negligence of plaintiff as implying negligence of defendant, note, 19 Ann. Cas. 1234. See, also, 19 Cal. Jur. 644, 647; 20 R. C. L. 107.

to have lights is not applicable to a child's coaster, in view of the rule of construction that general words following the enumeration of particular classes of persons or things will be construed as applicable only to persons or things of the same general nature or class, and of the subsequent language of the ordinance expressly exempting vehicles which may be propelled by a pedestrian from the operation of the ordinance.

(1) 22 C. J., p. 566, n. 30.   (2) 4 C. J., p. 950, n. 69.   (3) 4 C. J., p. 1034, n. 39; 38 Cyc., p. 1622, n. 46.   (4) 17 C. J., p. 870, n. 60.   (5) 4 C. J., p. 1029, n. 30.   (7) 38 Cyc., p. 1634, n. 15. (8) 42 C. J., p. 924, n. 66.   (9) 42 C. J., p. 1277, n. 29.   (10) 38 Cyc., p. 1653, n. 11.   (11) 42 C. J., p. 1278, n. 49.   (12) 38 Cyc., p. 1707, n. 98.   (13) 42 C. J., p. 894, n. 52; 36 Cyc., p. 1119, n. 36.

APPEAL from a judgment of the Superior Court of Alameda County. F. M. Jamison, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Wm. M. Abbott, K. W. Cannon and J. E. Reardon for Appellant.

Ostrander & Carey and Charles D. Woehr for Respondent.

STURTEVANT, J.—The plaintiff commenced an action to recover damages for injuries sustained in a collision between a Ford truck operated by the defendant and a coaster operated by the plaintiff and his brother. A trial was had in the lower court, the jury brought in a verdict in favor of the plaintiff, and from the judgment entered thereon the defendant has appealed under section 953a of the Code of Civil Procedure.

In his complaint the plaintiff pleaded negligence in general terms following the form of the complaint in *Stein* v. *United Railroads*, 159 Cal. 368 [113 Pac. 663]. The defendant answered setting up several defenses. By denials he put in issue all of the allegations contained in the plaintiff's complaint and then he pleaded the contributory negligence of the plaintiff.

The accident occurred on the nineteenth day of October, 1921, at about 6 o'clock in the evening. It occurred on Milvia Street about seventy or seventy-five feet north from

the intersection of that street with Bancroft Way in the city of Berkeley. That street has a grade of 1.4 per cent. Robert Salzberger was driving a Ford truck and there was no one riding with him. The plaintiff, Thomas Osborne Wright, a lad twelve years of age, was on the front end of a coaster and his younger brother, Ronald Wright, ten years of age, was seated on the rear end of the coaster with his back turned to Thomas. Thomas was pushing with his left foot and Ronald was pushing with both feet. So far as the record discloses no other person either saw or heard the collision. Robert Salzberger testified that he did not see the Wright boys until he saw them two feet in front of his left-hand fender and six inches to the left. He testified that he next saw them after the accident and at that time they were fifteen feet to the rear. The plaintiff and his brother testified that when they were in Milvia Street at a point near the "Turner house" they saw the lights of an automobile near an electric pole located on the south side of Bancroft Way. The distance between those points does not appear. Except as above stated, neither party saw the other before the accident. Each of the Wright boys testified that they were proceeding on their right-hand side of Milvia Street. Robert Salzberger testified on the subject of the position of the Wright boys in the street, of the location of the blood spot, and of the exact place where the impact took place. On the first trial he testified: "At the time of the accident I was four feet from the right-hand curb." At the time of the second trial he testified that at the time of the accident he was ten feet from the curb. Asked why he changed his testimony, he stated: "The only reason, the figures must come out right. As I said figuring it over if I was two feet from the center, if my machine was six feet wide, that would make eight feet, that would leave remaining ten feet from the curb. . . . I was coming north from Bancroft on the right-hand side there. I could feel something thud on my left wheel; as I felt that I put on my foot-brake and then I automatically turned. I had one foot on the emergency. I turned to see what it was and saw the outline of the children. . . . I generally go straight on the road. Q. If you were over here on the right-hand side why didn't you stop at the right-hand curb, stop and run back? A. I don't know why I didn't. . . . I should judge about sixty-five feet

north of the intersection, that I judge, I saw this coaster with two boys on it and they were about two feet over my left front fender, that is to my left and in front also. They were about a foot and a half in front and, well, about two feet in front, a little over on the side about six inches over my fender to the left of my machine. I didn't see these boys or that object any time before they were two feet in front of me. As I drove along there from Bancroft on Milvia up to the point within two feet of these boys they were not in the rays of my light at all. . . . The blood spot was six inches over on their side to the center of the street. . . . They were .tipped from their side of the street or tipped west. The blood spot was six inches over on their side of the center of the street. . . . I would say the actual contact or collision took place on my side of the street within two feet of my center of the street."

[1] The photographs show that the middle of the street is not marked on the surface of the ground. Although Robert Salzberger was examined and cross-examined extensively, at no time did he testify that he saw the curb on either side, nor did he give any testimony on which the last statement was predicated. It was solely the conclusion of the witness. In the absence of the last sentence quoted, there is not a particle of evidence in the record sustaining the claim of the appellant that the Wright boys were on the wrong side of the street. On the contrary, all of the evidence, direct and indirect, and the conclusions to be drawn therefrom, are against the appellant.

On the trial of the case the evidence was conflicting as to the exact time the accident occurred. Robert Salzberger claimed that the accident occurred at 6:10 or 6:12 P. M. The Wright boys claimed that the accident occurred a few minutes before 6. Robert Salzberger claimed that at the point where the accident occurred, in the absence of the lights on his truck, it was pitch dark. The plaintiff claimed that it was not pitch dark and that it was between daylight and dark. All of the evidence regarding the speed at which Robert Salzberger was driving is contained in his testimony. He testified that he was driving eighteen or twenty .miles per hour. There was evidence that he stated to others that he was driving twenty to twenty-two miles per hour. Neither party printed the testimony and neither states the

fact whether Robert Salzberger did or did not sound a horn or gong or otherwise give notice of his approach. There was evidence that his machine was equipped with lights and that his lights were burning. There was evidence that the coaster had no lights and that it did not have a horn or gong. In presenting the case for the plaintiff, and in presenting the case for the defense, the witnesses were examined and cross-examined extensivly regarding the position in Milvia Street of a spot of blood which indicated where the respondent's head lay after he was knocked over by the truck. Numerous photographs were introduced on the trial for the purpose, as stated by counsel, of showing the location of that spot of blood with reference to the middle line of Milvia Street. There was no evidence that it was on the left side of the middle of the street. All of the evidence was to the effect that, before the collision, the coaster was on the right of the blood spot. There was evidence that at the time of the collision the plaintiff fell forward and toward the middle of the street. There was no evidence to the contrary. There was evidence that Milvia Street was closely built up, but the record does not show that any signs had been erected bearing thereon the words and figures "20 miles speed limit." (See Deering's General Laws [1921], p. 1645, to which all references will be made in citing the statute.) Several ordinances of the Berkeley council regarding the operation of motor vehicles and coasters were introduced in evidence. From what we have said, it will be seen that in the trial court the theory on which the respondent presented his case was that Robert Salzberger at the time of the accident was driving his truck at an unlawful speed and on the wrong side of the street. It will also be seen it was the theory of the appellant that he controverted both contentions made by the respondent and that it was his claim that the respondent was at the time of the accident guilty of contributory negligence and that such contributory negligence consisted in violating the provisions of the said ordinances of the city of Berkeley and provisions of the statute.

The appellant claims that the trial court erred (1) in refusing to give certain instructions which the appellant had requested, and (2) that the trial court gave certain instructions which should not have been given.

[2]  Before the first trial was had the parties entered into a stipulation that this action be consolidated and tried with an action that had been brought by the father.  Nevertheless, over the objection of the appellant, the trial court proceeded to try this action separately.  Conceding for the purposes of this decision, and for such purposes solely, that in so doing the trial court erred, there is no showing that the error was prejudicial.

[3]  The appellant earnestly objects to an instruction which the trial court gave regarding the duty resting on Robert Salzberger to sound his horn as he proceeded to enter the dark zone on Milvia Street.  For the purpose of this decision it will be conceded that the instruction was not free from the objections which the appellant urges, but a search of the record discloses that no evidence whatever was introduced by either party as to whether Robert Salzberger did or did not sound his horn.  In other words, the instruction was utterly irrelevant to any evidence introduced.  It appears to be the settled law in the American jurisdictions that, "If an instruction not warranted by the evidence is calculated to mislead the jury and prejudice the objecting party it is ground for reversal.  But an instruction stating a correct proposition of law is not necessarily misleading, or prejudicial, merely because it is inapplicable to the facts in evidence, and where it is not so, there is no ground for reversal."  (38 Cyc. 1621, 1622; *Thomas* v. *Northwestern etc. Ins. Co.*, 142 Cal. 79, 84, 85 [75 Pac. 665]; *Renfro* v. *Fresno City Ry. Co.*, 2 Cal. App. 317, 325 [84 Pac. 357]; *Hammond* v. *Pacific Electric Ry. Co.*, 32 Cal. App. 756, 763 [164 Pac. 50]; *City of Los Angeles* v. *Pomeroy*, 124 Cal. 597, 644 [57 Pac. 585].)  The instruction complained of in the case last cited dealt with the defendant's right surreptitiously to take certain waters.  As there was no evidence whatever of theft the court held that the instruction was harmless.  In *People* v. *Cochran*, 61 Cal. 548, the appeal involved a conviction of murder.  The instruction complained of was an incorrect statement of law.  It did not apply to any facts to be found in the record.  The court said: "Presumptively, however, an erroneous proposition of law, referring in no way to the evidence in the case submitted to the jury, has not prejudiced the defendant."  In *Bosqui* v.

*Sutro R. R. Co.,* 131 Cal. 390 [63 Pac. 682], the plaintiff was injured when one of the defendant's cars left the track and collided with another one of defendant's cars. The defendant claimed that the car was forced off the track by an obstruction. There was evidence of the presence of an obstruction, but not a particle of evidence that the defendant had put the obstruction on the track. The trial court gave an instruction regarding the defendant's liability which contained the statement, "unless on the whole case, it has been shown by competent evidence that defendant, or its servants, placed the obstruction on the rails, . . . " The court cited and followed the rule in the Cochran case. (See, also, cases cited in *Marston* v. *Pickwick Stages,* 78 Cal. App. 526 [248 Pac. 930].) The instruction complained of in the instant case was far less harmful, if it was harmful at all, than the instructions considered in the cases cited.

[4] The trial court instructed the jury on the subject of damages, among other things, as follows: "Of course the law prescribes no definite measure of damages in cases of this kind, but the law leaves the amount of such damages to be fixed by the jury as their discretion and judgment dictates and as under all the circumstances may be just and proper." The appellant objects to the instruction and quotes Civil Code sections 3281, 3282, 3333, and 3359. Having done so he does not make it clear that our law does prescribe a definite measure of damages. (*Rystinki* v. *Central California T. Co.,* 175 Cal. 336, 345 [165 Pac. 952].)

[5] The trial court instructed the jury: "Before the plaintiff can recover in this action it must first appear to your satisfaction that the defendant was guilty of some act of negligence which directly contributed to the accident. It must also appear to your satisfaction that the plaintiff was without fault or negligence on his part which may in anywise have contributed to the accident." The instruction was improperly worded. (*Hutson* v. *Southern California Ry. Co.,* 150 Cal. 701, 705 [89 Pac. 1093].) However, there is nothing in the record to show that the error was prejudicial.

[6] The trial court gave an instruction as follows: "I instruct you it was the duty of the defendant while operating his automobile on Milvia street at and before the happening of the accident herein complained of to keep such a

lookout ahead for other traffic on the street and for pedestrians and for other persons using the street as an ordinarily careful and prudent person would have done and if the defendant failed to perform his duty and you find that such failure on his part was the proximate cause of the injury herein complained of then and in that event your verdict must be in favor of the plaintiff.'' The appellant contends that, because it contains no reservation regarding his defense, plaintiff was guilty of contributory negligence, and that the instruction was, in effect a directed verdict against the appellant. (*Starr* v. *Los Angeles Ry. Corp.*, 187 Cal. 270 [201 Pac. 599].) The negligence mentioned in the instruction objected to in the instant case was not specifically alleged in plaintiff's complaint, was not mentioned by him in his opening statement, nor was it suggested in any question propounded by him to any witness. The record does not disclose whether the instruction was given at the request of the plaintiff or was given by the court of its own motion As to whether Robert Salzberger was keeping a lookout ahead as he drove north on Milvia Street, no witness testified on the subject except Robert Salzberger. In reply to a question propounded by his own counsel he testified that he was looking straight ahead of him. In view of the distinct issues which were presented during the trial and which were wholly unrelated to the subject matter of the instruction quoted, it is impossible to say that the jury was confused by any portion of the instruction. To sustain the appellant's position we must assume that the jury found against the statement of Robert Salzberger and found that he was not keeping ''such a lookout ahead for other traffic on the street and for other pedestrians . . . ''; and that thereupon the jury took up the second proposition contained in the instruction and proceeded to bring in a verdict in favor of the plaintiff without giving any consideration whatever to the question of contributory negligence. There is nothing in the record that justifies us in so doing. Under circumstances not wholly dissimilar, where the same contention was made, the supreme court ruled that the instruction was harmless. (*Idemoto* v. *Scheidecker*, 193 Cal. 653, 662, 663 [226 Pac. 922].) As the matter of keeping a lookout ahead was not an issue, no instruction should have been given on

the subject. The rights of the litigants are not altered because the instruction complained of was also improperly worded. We think that the instant case, in so far as this point is concerned, is not ruled by the Starr case, but is ruled by what was said in *People* v. *Cochran, supra.*

[7] The trial court instructed the jury regarding the maximum speed permissible. The instruction closed with the words, "and if the jury finds that such negligence, if they find that any occurred, is the proximate cause of the injury complained of, then the injured person may recover." It also instructed the jury regarding imputed negligence and closed with the words, "such negligence is not to be imputed to the child or deprive him of a verdict." The appellant claims that both of those instructions were subject to the same criticism—directed a verdict in favor of the plaintiff without taking into consideration the defense · of the defendant. A most cursory reading of the instructions discloses that neither one purported to direct a verdict. For that reason the attack may not be sustained.

[8] The trial court instructed the jury as follows: "Section 22a of the Motor Vehicle Act of this state, at the time of this accident, provided as follows: 'Any person driving or operating a motor or other vehicle on the public highway shall operate or drive the same in a careful and prudent manner and at a rate of speed not greater than is reasonable and proper, having regard to the traffic and use of the highway and no person shall operate or drive a motor vehicle or other vehicle on a public highway at such a rate of speed as to endanger the life or limb of any person or the safety of any property.' And further it is provided that in any event no person shall operate or drive a motor vehicle or other vehicle on any public highway where the territory contiguous thereto is closely built up at a greater rate of speed than twenty miles an hour. And I further instruct you that if you find from the evidence in this case that the defendant Robert. Salzberger violated this provision of the Motor Vehicle Act, then such violation is negligence in itself and if you further find that such negligence is the proximate cause of the injuries herein complained of by plaintiff and that the plaintiff himself was in the exercise of ordinary care, your verdict must be in favor of the plaintiff." The

appellant quotes from the statute: " 'Closely built up' shall mean the territory of any . . . city . . . contiguous to a public highway, which is on the line of said highway not mainly devoted to business, where for not less than a quarter of a mile the dwelling-houses and business structures on such highway average less than 100 feet apart; provided, that the local authorities having charge of such highway shall have placed conspicuously thereon at the boundary lines of such district, signs of sufficient size to be easily readable by a person using the highway, bearing the words and figures '20 miles speed limit' which words shall be printed in white letters on a red background; . . . " Having quoted the above passage the appellant contends that evidence of "sign posting" is in the nature of indispensable evidence. The question is not new. It has been ruled to the contrary in several cases. (*Varcoe* v. *Lee*, 180 Cal. 338, 347 [181 Pac. 223]; *Sinclair* v. *Pioneer Truck Co.*, 51 Cal. App. 174, 178 [196 Pac. 281]; *Collom* v. *Bloch*, 70 Cal. App. 33, 38 [232 Pac. 486]; *Dewhirst* v. *Leopold*, 194 Cal. 424, 432 [229 Pac. 30].) There is an abundance of evidence in the record showing that in fact the accident occurred in a "closely built up" neighborhood. The trial court committed no error in giving the instruction complained of.

[9] If we are correct in what we have just said regarding the foregoing instruction, it follows that it would not have been proper for the trial court to instruct the jury that at the time and place of the accident Robert Salzberger was entitled to drive thirty miles an hour. The trial court did not err in refusing to give the defendant's requested instruction to the effect that thirty miles per hour was the maximum legal speed at said time and place.

[10] Complaint is made regarding an instruction which stated the duty of the driver to keep his motor vehicle under control. The appellant says it was a charge on a question of fact, argumentative, misleading, and unfair. It purports to be based on the instruction approved in *Meyers* v. *Bradford*, 54 Cal. App. 157 [201 Pac. 471]. A careful examination does not disclose any feature wherein it differs materially from the instruction approved in that case.

[11] The trial court gave an instruction to the effect that the defense of contributory negligence presupposes the

existence of negligence upon the part of the defendant him-
self. The appellant admits that it states a legal truism,
but that it was misleading. However, the appellant cites no
part of the record showing that the jury was misled to any
extent whatsoever. As addressed to the record in the in-
stant case, we find no error in the instruction.

[12] Appellant earnestly complains because the trial
court did not read to the jury, as part of its instructions,
certain ordinances and parts of ordinances of the Berkeley
council. Those ordinances and parts of ordinances had been
received in evidence and had already been read to the jury.
Thereafter, and immediately before respondent's counsel
commenced his closing argument, appellant's counsel made
the above-mentioned request of the trial court. Apparently
the request was made by handing to the trial court copies
of Ordinance 227 (N. S.), Ordinance 232 (N. S.), and sec-
tions 1, 2, 4, 10, 34, 41, 42, 44, and 47 of Ordinance No. 448
(N. S.). It was one request. No part of the request should
have been granted for the reasons which will hereinafter
appear. Be that as it may, it cannot be seriously contended
that the request should have been granted as made. The
trial court did not commit a reversible error by failing to
segregate from the mass of material requested any particular
part and give that portion. (*Williamson* v. *Tobey*, 86 Cal.
497 [25 Pac. 65]; *Dover* v. *Archambeault*, 57 Cal. App. 659,
664 [208 Pac. 178].)

No part of Ordinance 227 or Ordinance 232, or of sections
2, 41, and 42 of Ordinance 448 deals with a subject matter
which was pertinent to any fact or set of facts introduced
in evidence.

As to the application of the provisions of section 44 to the
facts of this case, that matter was fully treated in *Wright*
v. *Salzberger & Son*, 63 Cal. App. 450 [218 Pac. 785]. On
the second trial the appellant made no effort to develop the
foundation there delineated.

In so far as any portion of section 4, section 10, or section
47 of Ordinance 448 was pertinent to any facts introduced
in evidence, the subject matter was fully covered by cognate
sections of the Motor Vehicle Act, which were duly read
to the jury as part of the instructions of the court.

[13] The appellant calls attention to the last sentence
of section 34 of Ordinance 448 and then he calls attention

to the definition of "vehicle" as contained in section 1, and he argues that reading both passages together and substituting the definition of "vehicle" wherever that word occurs, that then we have a legislative provision which is applicable regarding the duty of the respondent to have lights on his coaster. Making the substitution as requested, it will be seen at once that numerous inconsistencies and absurdities are created. However, the method suggested by the appellant is not the appropriate rule of statutory construction to be followed. It is not even contended that respondent's coaster comes within the provisions of the first sentence, or the second sentence of section 34. The third sentence is: "Every motorcycle or vehicle while on the public highway, etc." That enumeration commences with the particular thing "motorcycle," and is followed by the general expression "vehicle." We think the rule applicable was stated by the court in *Pasadena University* v. *Los Angeles Co.,* 190 Cal. 786, 790 [214 Pac. 868], as follows: "It is the rule of construction that where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated. (36 Cyc. 1119; 25 R. C. L. 996, 997; 2 Lewis' Sutherland's Statutory Construction, secs. 803, 804.)" As so construed the sentence may be said to be applicable to motorcycles (that is, bicycles having a motor), motortricycles, and perhaps to some other vehicles operated by motors. As so construed, force and effect is given to every part of the section and no absurdity whatever is created. This view is re-inforced by the language used by the legislative body: "Every motorcycle or vehicle . . . " The expression uses the disjunctive "or." If the class was to be broadened, as appellant contends, the council would have used the conjunctive "and." So construing the ordinance, the respondent's coaster did not come within the things enumerated in the third sentence. It was expressly excepted by the language used in the second sentence: "All other vehicles, except motorcycles, bicycles, and horses, and such vehicles that may be *propelled by a pedestrian* shall carry at the left side thereof a lighted lamp visible front and rear and from the left for a distance of not less than 200 feet."

As respondent's coaster was expressly excepted from the operation of the ordinance, the trial court did not err in refusing to read to the jury the provisions of the ordinance.

The judgment is affirmed.

Koford, P. J., and Nourse, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 10, 1927.