[Crim. No. 60. Fourth Appellate District.—January 25, 1932.]

THE PEOPLE, Respondent, v. HOWARD SWANSON, Appellant.

Head, Wellington & Jacobs and A. P. Nelson for Appellant.

U. S. Webb, Attorney-General, and John D. Richer, Deputy Attorney-General, for Respondent.

JENNINGS, J.—The defendant was convicted. of the crime of burglary of the second degree. From the judgment of conviction and from the trial court's order denying his motion for a new trial he has prosecuted this appeal.

Among the grounds urged for a reversal, appellant contends that the evidence produced at the trial was insufficient to support the verdict of guilt. It is therefore proper to describe as briefly as possible the salient evidentiary facts which the record discloses.

At some time between the hour of 3:30 P. M. of Friday, July 31, 1931, and the hour of 9:30 A. M. of Sunday, August 2, 1931, the home of Max Royer in the city of Fullerton, Orange County, California, was broken into and a number of articles of personal property were taken there-

from. Among the articles stolen were a Kolster radio, a machine gun, and eight revolvers and pistols. Two witnesses produced by the respondent testified that they saw the appellant in company with one Cecil Rennaker in Santa Ana, Orange County, at 12:30 P. M. on Saturday, August 1, 1931, at which time Rennaker repossessed a Durant automobile. At about 4 o'clock P. M. of the same day appellant and Rennaker called at the residence of R. A. Haskell at 1950 East 74th Street, in the city of Los Angeles where they remained for at least an hour and twenty minutes. At this time the radio and the eight firearms, which were identified as articles taken from the home of Max Royer, were exhibited and sold by Rennaker to various persons in the Haskell house. The radio was sold by Rennaker to Mrs. Haskell for the sum of $25. A so-called bill of sale to the radio was written by appellant and was signed by him under the fictitious name, "Bud Rogers". The evidence indicates that appellant wrote this instrument and signed it at the request of Rennaker. One of the revolvers was sold by Rennaker to R. A. Haskell and six firearms were sold by Rennaker to Geo. A. Schaefer. There was some dispute between Rennaker and Schaefer as to the price demanded by the former for one of the weapons, a German Mauser automatic pistol. Prior to agreeing upon the amount offered by Schaefer for this gun, Rennaker consulted with appellant who, according to Schaefer's testimony, objected that the price was not adequate whereupon Rennaker stated: "I own these guns too" and appellant said "All right, go ahead and sell them." Schaefer also testified that he inquired of both Rennaker and appellant if they were sure the guns were not "hot" and that each of them assured him that they were not "hot"; that they were state officers and that they offered to take the guns and have them registered for him. The expression "hot" as used by the witness appears to convey the meaning "stolen". Schaefer's testimony also shows that he handed the money finally agreed upon as the sale price to Rennaker who handed it to appellant. Appellant, who resides in Los Angeles, was arrested on August 27, 1931, at Newport Beach in Orange County, to which place he testified that he had gone because he did not wish to be questioned in regard to the sale of the radio and firearms which subsequent

to August 1, 1931, he had learned from a newspaper article, were stolen goods. Appellant also testified that on August 25, 1931, two days prior to his arrest, he saw several police officers at his home and that he thereupon went to his sister's home as he thought the officers were watching him for the purpose of questioning him and as he had been in trouble before he "didn't want to be mixed up in any more trouble". Appellant testified in his own behalf at the trial and it may be conceded that his testimony, together with that of his witnesses, strongly negatived any connection on his part with the offense of which he was convicted. In this regard, however, it is pertinent to observe that in many important particulars the testimony produced by appellant and that which was presented by respondent differed so materially that an inescapable conflict was produced which the jury were at liberty to resolve in respondent's behalf. It must also be noted that the appellant was impeached by his own testimony that he had suffered two prior convictions of burglary.

It is urged that giving full weight to the evidence of respondent, the full effect produced by it amounts to no more than a showing that appellant had in his possession articles admittedly taken from the house that was entered and it is pointed out that the mere possession of stolen goods is not sufficient to warrant a conviction of burglary. But where a person is found in possession of recently stolen property slight corroborative evidence of other inculpatory circumstances tending to show his guilt will support a conviction (*People* v. *Cataline*, 54 Cal. App. 36 [200 Pac. 1060]; *People* v. *Gibson*, 16 Cal. App. 347 [116 Pac. 987]). Such inculpatory circumstances are here presented in appellant's participation in the sale of the stolen property (*People* v. *Majors*, 47 Cal. App. 374 [190 Pac. 636]), his conduct in evading the police officers whom he saw at his home two days prior to his arrest and his flight thereafter to another town (*People* v. *Cataline, supra*) and the inconsistencies in his testimony and contradictions of material parts thereof by witnesses for the prosecution (*People* v. *Garcia*, 68 Cal. App. 131 [228 Pac. 670]). The objection that the evidence produced at the trial did not warrant the verdict of conviction is therefore not well taken.

■ It is next urged that the trial court committed reversible error in giving to the jury an instruction on conspiracy wherein the jury was advised that where several persons combine to commit an unlawful act each of the persons so conspiring is criminally responsible for the acts of his associates. It is not objected that the instruction incorrectly stated the law with reference to the criminal responsibility of persons engaged in carrying out a common unlawful design but it is said that there was no evidence of a conspiracy and that therefore the instruction was improper. The record, however, indicates the presence of certain evidentiary facts and circumstances that point to the existence of a conspiracy between appellant and Rennaker to commit the offense of which appellant was convicted. Among these facts are the appearance of appellant and Rennaker at the Haskell residence, the possession of the stolen articles, appellant's participation in the sale of them, his admitted preparation of the so-called bill of sale at the direction of Rennaker and the signing by him of a fictitious name to the instrument, the various statements during this visit attributed to him, his receipt of the money derived from the sale of the stolen property. It is true that all of the above-mentioned facts occurred after the burglary was committed and would not therefore furnish competent evidence tending to prove the existence of a conspiracy to commit a burglary. In addition to these facts the following also appear: That appellant had been employed by Rennaker in the business of repossessing automobiles for two months prior to August 1, 1931; that appellant met and talked with Rennaker between 7:30 A. M. and 8:30 A. M. on August 1, 1931; that appellant was seen with Rennaker at 12:30 P. M. in Santa Ana, California, when the Durant sedan was repossessed by Rennaker; that the burglary was committed in the city of Fullerton, a few miles distant from Santa Ana, at a time not fixed except that it was committed between 3:30 P. M. on July 31, 1931, and 9:30 A. M. on August 2, 1931. All of the above narrated facts together with other circumstances disclosed by the record furnish some evidence from which the existence of a conspiracy between Rennaker and appellant to commit the offense might be inferred. A conspiracy generally must be proved by circumstances and if the cir-

cumstances tend to prove a conspiracy it is for the jury, not the court, to determine whether they are consistent with a reasonable hypothesis of innocence. (*People* v. *Moran,* 144 Cal. 48, 55 [77 Pac. 777]; *People* v. *Donnolly,* 143 Cal. 394, 398 [77 Pac. 177].)

But if it be conceded, as appellant contends, that there was no evidence tending to show a conspiracy between appellant and Rennaker to commit the burglary nevertheless we are of the opinion that the giving of the instruction complained of did not constitute error necessitating a reversal of the judgment. In this regard it is the rule that only instructions which are applicable and pertinent to the issue should be given and that the charge of the court may not, without error, even though correctly stating abstract legal principles, be extended to the point of covering an assumed issue which finds no support in the evidence. (*People* v. *Roe,* 189 Cal. 548 [209 Pac. 560].) The error committed in giving such an instruction, however, in order to warrant a reversal of the judgment must appear to have misled the jury to the prejudice of the party complaining of it. (*People* v. *Cochran,* 61 Cal. 548; *Bosqui* v. *Sutro R. R. Co.,* 131 Cal. 390 [63 Pac. 682]; *People* v. *Methever,* 132 Cal. 326 [64 Pac. 481]; *People* v. *Romero,* 143 Cal. 458 [77 Pac. 163]; *Marston* v. *Pickwick Stages, Inc.,* 78 Cal. App. 526 [248 Pac. 930]; *Wright* v. *Salzberger & Sons,* 81 Cal. App. 690 [254 Pac. 671].) Since the record indicates that the evidence produced was ample to warrant the verdict of conviction, the giving of the instruction correctly stating an abstract principle of law did not constitute such error as to require a reversal.

After the jury had deliberated for approximately twelve hours it was returned to the courtroom at 11:38 P. M. and the court thereupon requested the foreman to indicate how the jury stood numerically. Upon being advised that the jury stood nine to three and that no numerical change had taken place during the preceding eight hours, the court ordered that the jury be taken to a hotel for the night. Prior to making the order that the jury be taken to a hotel, the court, made the following statement: "I am very reluctant to dismiss this jury without a verdict. The purpose of every trial is to get a verdict, that is the ultimate purpose of every trial, and failure to do so is, of course,

of great expense to the taxpayers of this county, and loss of time to the court and loss of time to counsel, and while I regret the inconvenience which I know will follow the order I am about to make, I feel it my duty to direct that you be taken to a hotel and be brought back to the court room tomorrow morning to resume your deliberations at that time.''

Exception is taken by appellant to these remarks of the court as conveying to the jury an impression that it was necessary for a verdict to be reached. It cannot be maintained with any hope of success that the remarks complained of contain any inference that the court considered that the evidence pointed to the guilt of appellant or that they were coercive in character. The jury was reminded of the loss both in money and in time resulting from mistrials and of the desirability that a verdict be reached and the trial finally concluded. The court committed no error in so advising the jury. (*People* v. *Miles,* 143 Cal. 636 [77 Pac. 666]; *People* v. *Quon Foo,* 57 Cal. App. 237 [206 Pac. 1028]; *People* v. *Selby,* 76 Cal. App. 715 [245 Pac. 792].)

The judgment and order are affirmed.

Barnard, P. J., and Marks, J., concurred.