[S. F. No. 1594.   Department Two.—January 16, 1901.]

## BENJAMIN A. BOSQUI, Respondent, v. SUTRO RAILROAD COMPANY, Appellant.

Negligence—Derailed Car—Testimony as to Speed—Question for Jury.—In an action for damages for alleged negligence in the collision of a derailed electric-car with a car approaching upon the other track, it cannot be said, as matter of law, that the jury should disregard the testimony of the passengers as to the speed of the derailed car, and accept only the testimony of the experienced railroad men. Where no objection was made to the testimony of the passengers, it was a question for the jury to determine what witnesses they would believe.

Id. — Conflicting Evidence as to Negligence — Conclusiveness of Verdict.—Where the evidence is conflicting upon different hypotheses as to what caused the derailment of the car, and as to the negligence of the motorman upon either or both of the colliding cars in running at an excessive and dangerous rate of speed,

and in not stopping his car in time to avoid the collision, to plaintiff's injury, and there is no question of contributory negligence, the verdict of the jury in favor of the plaintiff is conclusive, and will not be disturbed upon appeal.

Id.—Proximate Cause of Injury—Gravel Upon Track—Excessive Speed—Application of Rule.—The correct rule that the breach of duty complained of must be the proximate cause of the injury to the plaintiff, operating in a natural and continuous sequence, unbroken by any new cause, to produce the event, and without which it would not have occurred, cannot be necessarily applied on the assumption that the collision was proximately due to an obstruction of gravel placed upon the track by others, where the evidence conflicts as to whether the derailment of the car did not cause the piling up of the gravel, and as to whether the collision would have occurred with force if the car were not running at an excessive speed over the gravel, assuming that it had been previously placed upon the track.

Id.—Evidence—Comparison as to Equipment of Road.—Evidence is not admissible to show a comparison between the equipment of the defendant's road with that of other roads in the same city.

Id.—Rate of Safe Speed—Harmless Ruling.—The exclusion of a question as to the possible rate of speed with which cars could be run over the road with safety is harmless, where the only objection made was to the form of the question, and the witness immediately thereafter was allowed to testify to that subject matter.

Id.—Duty to Passengers—Utmost Care of Extremely Cautious Persons—Modification of Requested Instructions.—A railroad company is bound to its passengers for the utmost care and diligence of extremely cautious persons, and is responsible for the slightest negligence. Requested instructions to the effect that the standard of care and foresight to be used by the motorman of an electric-car is that of "the average prudent man standing in his shoes and compelled to exercise care in the same situation and circumstances," are properly modified by substituting "an extremely cautious person," instead of "the average prudent man."

Id.—Province of Court and Jury.—It is the province of the court, and not of the jury, to say whether a failure to exercise the utmost care, or the care which an extremely cautious man would, under the same circumstances, have exercised, constitutes negligence; while it is for the jury to say whether such care was in fact exercised.

Id.—Presumption of Negligence from Accident to Passenger.—The rule that "the proof of the occurrence of the accident, without fault of the passenger, is *prima facie* proof of negligence on the

part of the company," is applicable in the case of street railways operated by electricity or steam power.

Id.—Obstruction Upon Rails—Part of Instruction Inapplicable to Evidence—Prejudice not Presumed.—An instruction to the effect that if there was an obstruction upon the rails, without which the accident would not have occurred, the plaintiff cannot recover unless it is proved that defendant or its servants placed it there, or unless its servants could, by the exercise of the care of a very cautious person, have discovered the obstruction in time to have avoided the accident, is not presumed prejudicially erroneous merely because there was no evidence that defendant or its servants placed the obstruction upon the rails.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. William R. Daingerfield, Judge.

The facts are stated in the opinion.

Stanley, McKinstry, Bradley & McKinstry, and Smith & Murasky, for Appellant.

C. H. Wilson, for Respondent.

CHIPMAN, C.—Action for personal injury. The trial was by a jury, and plaintiff had the verdict. Defendant appeals from the judgment and from an order denying its motion for a new trial. The injury was caused by one of defendant's cars leaving the rails and colliding with another of its cars coming from an opposite direction.

1. It is contended by defendant that the evidence is insufficient to justify the verdict. Counsel argues the point upon the assumption either: 1. That the judgment can be sustained only on the theory that defendant failed to overcome the presumption of negligence arising from proof of the accident; or 2. That evidence "real and substantial" (*Driscoll v. Market St. Cable Ry. Co.*, 97 Cal. 553[1]) was offered by plaintiff that the car was derailed because of its excessive speed; and defendant's counsel assume that plaintiff will not contend that the negligence of defendant was affirmatively shown in any way other than by proof as to the speed of the car.

Plaintiff, however, contends not only: 1. That the car was being run at an excessive speed; but 2. That with even ordinary

---

[1] 33 Am. St. Rep. 203.

care the car could have been stopped after it left the rails, and before the collision; 3. That the incoming car should have been stopped before it collided with the car on which plaintiff was a passenger; 4. That the car was not derailed by gravel previously piled on the rails, as contended by defendant, but that any gravel found on them after the collision was thrown there by the car itself while running along the side of the rails; and 5. If it be true that some person, unknown to defendant, placed the obstruction on the tracks, still defendant was guilty of negligence in not stopping the car before the collision.

Defendant operates an electric street railway line from the west terminus of the Sutter street car line to the Cliff House. Defendant's outgoing car 37 left its starting point going to the Cliff House at 8:35 o'clock P. M., April 9, 1897; on Richmond avenue, just beyond the crossing of Commonwealth avenue, and on a straight track, car 37 left the rails, and continued moving for a distance, variously stated as seventy to one hundred feet, when it collided with defendant's incoming car 29; plaintiff was riding on car 37, which was crowded with passengers, and received the injury complained of by reason of the collision; no question of plaintiff's contributory negligence arises, and the evidence is undisputed that the track was well constructed and the appliances for operating the car in perfect order, and suitable for the purposes for which they were being used.

Upon the question of the speed of car 37 when it left the rails, it is conceded by defendant that the evidence is conflicting—plaintiff's witnesses testifying to a speed of fifteen to twenty-five miles an hour, and defendant's witnesses to a speed less than eight miles an hour (the motorman put it at seven miles) —but defendant claims that its witnesses being experienced railroad men, "such testimony is entitled to more weight than that of ordinary railroad passengers." This view of the evidence seems not unreasonable, and, if the fact could be said to be one peculiarly within the knowledge of railroad men, should have had weight with the jury, but we cannot say as matter of law that the jury should have disregarded the one and accepted the other class of evidence. Defendant cites the case of *Grand Rapids etc. R. R. Co. v. Huntley,* 38 Mich. 37, 540,[2] where

---

[2] 31 Am. Rep. 321.

it was held that "opinions of persons riding in cars and not observing from the outside, should be excluded, unless the witnesses first show such extended experience and observation as to qualify them for forming such opinions as would be reliable." We cannot agree with this statement, but even if sound law, no objection was made to the testimony of plaintiff's witnesses upon this or any other ground; their testimony went to the jury unchallenged.    The question whether defendant's witnesses were more competent to testify to the point in issue than plaintiff's witnesses, and the reason for giving the greater credence to the opinions of defendant's witnesses were considerations properly addressed to the jury, and with their conclusion, there being sufficient evidence to support it, we cannot interfere. But the unusual, if not a dangerous, speed of a street-car on a straight track, unaccompanied by any other circumstance, is not negligence, and the court substantially so charged the jury. It was urged at the trial, and is urged here, that the evidence showed that gravel or loose macadam with which the street was paved had been piled on the rails by some person or persons unknown to defendant, and that the car was thrown from the track by this loose material, upon which the car came so suddenly that it was impossible for the motorman to check the speed and prevent the car from running onto the obstruction. Plaintiff contended and now urges that the track was clear, and that this loose material, afterward found packed upon the rails, was thrown there by the forward truck wheels as they passed along near the rails in the loose macadam before swerving to the left toward the incoming car, and was run over by the rear truck wheels while still on the track, thus accounting for the crushed appearance of gravel on the rails after the accident. The motorman testified that he saw the obstruction when within ten feet of it, and immediately set his brake; that the car ran over about six feet of the gravel on the track and then left it and collided with car 29 at a point about seventy feet distant, and that car 37 was running about seven miles an hour when it struck the gravel.    No other person saw any obstruction on the rails before the car went off, and there was evidence from which an inference might have been drawn that the gravel on the rails was pushed on to them by the car wheels after it left

the rails.  The motorman of car 29 testified that he saw car
37 jump the track when four lengths from his car, and he was
traveling about seven miles an hour up grade.  The evidence
was that both cars were so injured as to show that they came
together with considerable force so that, as testified by de-
fendant's superintendent, "the front of car 37 was broken in,
the glass broken and the steps wrenched and broken, and the
front poles or stanchions broken.  The king bolt was also
bent.  Car 29 was damaged in a similar manner."

These stanchions were three and one-quarter by two and one-
quarter inches dimensions, and by the concussion passengers in
both cars were unseated, and several of them thrown off the cars.
An experienced engineer, a builder and operator of electric
roads, Mr. Leland, testified that a car weighing twelve tons,
thirty-five feet long (these weighed twelve tons and were thirty-
seven feet long), proceeding down a five and eight-tenths per
cent grade (the grade at the point in question) at the speed of
twenty-five miles an hour, could be stopped in fifty feet; at
twenty miles an hour in about forty-two feet; at seven or eight
miles an hour in less than its own length.  He further testi-
fied: "In cases of emergency, electric-cars are stopped by throw-
ing in the reverse current.  It is called slugging the motors,
and it causes the motors to act as generators of electricity,
which causes the car first to stop and then go backward.  It is
a very simple operation, and, if the car at the time of the ac-
cident was proceeding motor off (as the motorman testified was
the fact), could have been applied instantly.  I have never
known it to fail, and it should always be resorted to in cases of
great peril or imminent danger.  It stops the car very quickly."
It is not pretended that defendant's motorman resorted to this
expedient, or did more than apply the brake, which he testified,
from what he said he afterward learned, did not have any effect
after the car left the track.  It is quite probable that the
motorman of car 29, coming up this grade, could have stopped
his car in time to have avoided the collision, if Mr. Leland's
testimony is to be believed, and it be true that car 37 was going
no faster than seven miles an hour when it left the track.  He
saw car 37 coming toward him, and off the track, one hundred
and forty-eight feet or four carlengths away, and at the speed

he was traveling, he could have stopped his car in less than its own length, and whether car 37 went seventy feet or one hundred feet, after it left the track, the two would not have come together. Motorman Knox, of car 29, also testified that he set his brakes and reversed his motors, and was "nearly stopped" when the collision happened. He testified further: "The other that was approaching me was not going over seven miles an hour, and much less, I think, at the time it hit my car." Mr. Knox does not state how far his car traveled after he applied the brakes and reversed the motor, but it could not have been over thirty-five feet according to Mr. Leland's testimony. This would show that car 37, after the brake was applied, while the car was on the track and with the brake on afterward, to more or less purpose, ran with its trucks in loose macadam over a hundred feet, and was, when it collided with car 29, still going at considerable speed, judging from the effect upon the two cars. The inference drawn by the jury from this evidence must have been that when car 37 jumped the track it was going at a high rate of speed, as plaintiff's witnesses testified and faster than the usual speed of defendant's cars, and much faster than the statutory limit of eight miles an hour; and that even though the car was derailed by means of the obstruction, the collision would not have occurred but for the excessive speed of car 37 at the time it left the track. Then, too, the jury may have believed Mr. Leland in stating that car 37 could have been stopped by the slugging process he described, but which the motorman failed to apply or account for not applying. The jury may also have believed from the testimony that motorman Knox, of car 29, was negligent in not stopping his car in time to avoid the accident; it was certainly his duty to do so if reasonably within his power, and defendant would be equally liable for failure of duty on his part as for failure of duty on the part of motorman Rogers of car 37. The evidence was conflicting upon all these hypotheses, and while we might differ with the jury as to where the preponderance of the evidence lay as to one or more of the theories upon which the jury must have determined the case, we are not at liberty to interpose our judgment for that of the jury, where, as we think was true, there was some real and substantial evidence to support the verdict.

Defendant's counsel correctly state the general rule that the breach of duty upon which an action is brought must be not only the cause, but the proximate cause of the damage to plaintiff; and as stated by Shearman and Redfield on Negligence, section 26: "The proximate cause of an event must be understood to be that which, in a natural and continuous sequence, unbroken by any new cause, produces that event, and without which that event would not have occurred." This rule is sought to be applied on the assumption that the evidence shows beyond question that the proximate and only cause of the collision in the present case was due to the obstruction on the railway track. But the evidence is not all one way as to the fact, and, besides, it does not follow that the car would have left the track at all if the speed had been seven or eight miles an hour instead of more than twice that speed, as the jury were warranted from the evidence in believing it to have been. Furthermore, defendant's counsel ignore the evidence of a new cause for the collision arising after the car left the track. The nature of this evidence has already been suggested. For example, the excessive speed of car 37 may not only have caused it to leave the track when, at the usual speed, it would have safely passed over the gravel on the track (assuming that gravel was previously placed there), but had the speed been seven miles an hour instead of fifteen or twenty, the car would in all probability not have run eighty or a hundred feet through the loose macadam, or, having done so, the two cars would have come together with little or no force.

2. Error is claimed in sustaining plaintiff's objection to the following question put to defendant's witness, Superintendent Van Frank: "How did these rails used on this electric road compare with the rails used on other roads in town, both electric and cable?" In sustaining the objection, the court said: "You can go into probative matters as to how this road is built, if you want to show it is a safely built road and safely equipped." Counsel stated that their purpose was to show that on a road such as this, and with such cars as were there used, the cars could run over the track thirty miles an hour with safety. The court remarked: "I don't say you cannot prove that, but I don't

think you can prove it in that way. You ask the witness now to compare the equipments of this road with equipments of other roads." We think the ruling was correct, and besides the record shows that counsel got what they wanted from the witness later on.

3. The same witness was asked the following question: "Now, at what rate of speed could those cars be run, if it were so desired, with absolute safety, so far as derailment was concerned?" The court sustained plaintiff's objection, and the ruling is claimed to be error. The court remarked that the objection was to the form only, and that counsel were entitled to some of the points suggested by the question, and counsel did immediately ask the witness whether a car such as No. 37 "could not be run over that road on a straightaway, barring curves, at a speed of thirty miles an hour, without derailment," and the witness answered it could. Conceding error in the ruling it was without injury.

4. Defendant asked certain instructions marked 2 and 3, which the court gave with modifications. The refusal to give the instructions as asked, and in giving them as modified, is assigned as error. The instructions involved were intended to guide the jury with reference to the duty of the motorman, and especially as to the degree of care required of him when suddenly confronted with an obstruction on the track, whose presence there he could not reasonably have anticipated or foreseen. Defendant asked that the jury be told that defendant would not be liable if the motorman exercised such care as "would have governed an ordinarily prudent man in the same circumstances," etc. Again, that "the standard of care to be used by motormen . . . . must be measured by the foresight and caution of the average prudent man standing in their shoes and compelled to exercise care . . . . in the same situation and surrounded by the same circumstances." The court defined the standard of care to be used by the motorman to be that of a "very cautious man standing in his shoes, and compelled to exercise care . . . . in the same situation and surrounded by the same circumstances." Again the court said: "If he acted in the premises with the same care as would be exercised under

the same circumstances by an extremely cautious person," etc. It is conceded by defendant's counsel that carriers of passengers must exercise "great care, or the utmost care, or even the care of very cautious persons," and that an instruction so stating would not have been erroneous "without the additional reference to surrounding circumstances"; but it is urged that as given the instruction "exacts double-distilled care of the defendant common carrier." The objection is stated in another form as follows: "The reasonable and prudent man, in view of the circumstances which surrounded Rogers, the motorman of car 37, would exercise the utmost care; and this is all that can be reasonably exacted of the common carrier. The extremely cautious person under such circumstances would exercise extraordinary care, which the law does not require of a common carrier"; and it is urged that "the effect of such a rule would be to make common carriers insurers of their passengers, since a jury might always find an accident could have been avoided if the motorman . . . . had exercised, under all the circumstances of the case, . . . . such care as a 'very cautious man,' or an 'extremely cautious person,' would have exercised." It is further urged that it was for the jury and not for the court to say whether a failure to employ extremely cautious men is a breach of the carrier's obligation to exercise the utmost care.

It was said in *Treadwell v. Whittier*, 80 Cal. 574,[3] after citing certain cases decided by this court: "It thus appears to be settled law in this state that a proprietor of stage-coaches is liable for the slightest negligence in regard to the vehicle provided by him; that he is responsible to his passenger for the utmost care and diligence of extremely cautious persons." In speaking of the rule as applied to railroad companies, the court said: "The railroad company is bound for the utmost care and diligence of very cautious persons, and is responsible for any, even the slightest, neglect." Many cases are cited approvingly where such expressions are used as "extreme vigilance," "as far as human care and foresight can go," "greatest possible care," "is liable for the smallest negligence," "highest degree of care,"

---

[3] 13 Am. St. Rep. 175.

and the like, as indicating the degree of care required. In *Mc-Currie v. Southern Pac. Co.*, 122 Cal. 558, the rule as to railroads was stated as follows: "The carrier of passengers is required to exercise the highest degree of care in their transportation, and is responsible for injuries received by them while in the course of transportation, which might have been avoided by the exercise of such care." We cannot see that the instructions complained of intensified the rule by the use of any unwarranted adjectives. The use of the terms "very cautious person" and "extremely cautious person" finds ample justification in adjudicated cases of recognized authority, and the qualifying words "under the same circumstances," seem to us rather favorable to defendant than otherwise, and, indeed, were used in the instruction asked by it. Negligence always is relative to the circumstances surrounding the case. (*Franklin v. Southern Cal. Motor Road Co.*, 85 Cal. 63.)

It was for the court to instruct the jury as to what constitutes negligence, and hence it was not error for the court to instruct as it did. It is not true that it was for the jury to say whether a failure to exercise the utmost care, or the care which an extremely cautious man would, under the circumstances, have exercised would constitute negligence; this was the function of the court, while the jury was to say whether such care had in fact been exercised.

5. It is contended that the court erred in instructing the jury, that "the proof of the occurrence of the accident, without fault of the passenger, is *prima facie* proof of negligence on the part of the company." The claim is that the rule is not applicable to street railway companies. (Citing *Hastings v. Central Crosstown Ry. Co.*, 40 N. Y. Supp. 93, where the cars were drawn by horses.)

The rule, as the trial court gave it, has been applied in this state to stage-coaches (*Boyce v. California Stage Co.*, 25 Cal. 460; *Bush v. Barnett*, 96 Cal. 202); to elevators in buildings (*Treadwell v. Whittier, supra*); in the case of explosion in a dynamite factory (*Judson v. Giant Powder Co.*, 107 Cal. 549,[4] where the principle upon which the rule rests was clearly

[4] 48 Am. St. Rep. 146.

stated); in case of a steam railway while operating in the streets of a city. (*McCurrie v. Southern Pac. Co., supra.*) There is no principle upon which an exception to the rule can be made in the case of street railways, especially where operated by electricity or steam power. The reason of the rule is equally applicable to electric-cars operating in a city.

6. The court gave the following instruction: "If you find that there was an obstruction on the rails, the question arises, 'would the accident have occurred if there had been no obstruction?' If you find that the accident would not have occurred without the obstruction, then subject to what I have just told you, the obstruction was the proximate cause of the injuries to plaintiff, and he cannot recover from defendant, unless, on the whole case, it has been shown by competent evidence that defendant, or its servants, placed the obstruction on the rails, or unless the servants of defendant could by the exercise of the care exercised by a very cautious person, have discovered the obstruction in time to have avoided the accident." There was no evidence whatever that defendant or its servants placed the obstruction on the rails, and it is contended that it was error to assume the possible existence of a state of facts which the jury had no right to find, there being no evidence of any such facts. In *People v. Cochran,* 61 Cal. 548, it was said: "If an instruction in a case is asked which refers to facts which there is no evidence to prove, it is not error to refuse to give it, and if given, although in fact erroneous in the abstract, it will not be regarded as an error for which the judgment will be reversed, unless it be manifest that the jury was misled by it to the prejudice of the defendant. Presumptively, however, an erroneous proposition of law, referring in no way to the evidence in the case submitted to the jury, has not prejudiced the defendant." If this latter statement be true, surely a correct proposition of law under like circumstances would not necessarily mislead the jury. In the present case, there was not the slightest evidence or suspicion pointing to the defendant as having placed the obstruction on the rails, and we do not think the instruction assumes that any such evidence existed. We do not believe that the reference made to defendant in that connection

CXXXI. Cal.—26

could, in view of the evidence in the case, have made the slightest impression on the jury to defendant's prejudice.

We advise that the judgment and order be affirmed.

Smith, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

McFarland, J., Henshaw, J., Temple, J.