[Civ. No. 614. Fourth Appellate District.—December 20, 1932.]

H. G. McKINLEY et al., Appellants, v. FRANK DALTON, Respondent.

McFadden & Holden for Appellants.

Charles X. Arnold and Forgy, Reinhaus & Forgy for Respondent.

MARKS, J.—This is an action instituted to recover damages resulting from injuries to Marie L. McKinley, wife of H. G. McKinley, while Mr. and Mrs. McKinley were riding in an automobile as guests of defendant. The trial court found that defendant was guilty of gross negligence which was the proximate cause of the injury, and that H. G. McKinley was guilty of negligence which proximately contributed to the injury of his wife, which negligence was imputed to her and barred recovery for both. Plaintiffs have appealed from the judgment.

Appellants urge as the sole ground upon which they rely for a reversal of the judgment that the finding that H. G. McKinley was guilty of contributory negligence is not supported by the evidence and is contrary to it. Respondent has made no appearance in this court.

There is practically no conflict in the evidence, the stories of the parties varying in but one minor particular. Respondent, with appellants as his guests, left the Rex Arms Apartments in the city of Los Angeles at about 4:15 o'clock in the afternoon of February 19, 1931, to drive to the city of Fullerton. Mr. McKinley rode in the front seat beside the driver, with Mrs. McKinley occupying the rear seat. The journey was made over what is commonly known as the "Telegraph Road", which passes through the town of Buena Park over Grand Avenue. Just after turning into Grand Avenue respondent speeded up his automobile to between fifty-five and sixty miles per hour. Appellants both warned him that he was approaching a small town

where roads intersected Grand Avenue and that there were dangerous dips or drains across the road that could not be driven through at a high rate of speed. They both asked him to reduce his speed, which he failed to do. He drove through a deep drain at the intersection of Grand Avenue and Artesia Boulevard at fifty or more miles per hour. Mrs. McKinley was thrown against the top and fell back into the bottom of the car, causing a compressionary fracture of the first lumbar vertebra of her spine.

▉ Under section 113 of the California Vehicle Act, in effect at the time of the accident, the intersection of Grand Avenue and Artesia Boulevard was an obstructed intersection where the speed limit was fifteen miles per hour. According to the testimony of respondent he drove across the dip at between forty-five and fifty miles per hour. This is the only conflict in the evidence. The trial court found that his speed at that time was in excess of fifty miles per hour. This evidence amply sustains the finding that respondent was guilty of gross negligence.

▉ The finding that H. G. McKinley was guilty of contributory negligence was based entirely upon his own testimony from which it appears that all the parties had lived in the same city in Montana for a number of years, and during their residence there respondent had taken Mr. McKinley on several trips. Concerning these trips he testified as follows: "Q. And you often went out for a ride with him? A. Well, I wouldn't say often — occasionally. Q. And Mrs. McKinley also went for a ride occasionally? A. I think she has been with him very few times. She never rode with him very much. Q. And during that time you have found him to be a pretty fast driver, haven't you? A. At times he drives fast, yes, sir. Q. And you have cautioned him repeatedly about his fast driving before you came to California, haven't you? A. Well, I don't know what you would call repeatedly. If I go out with him and he drives too fast I would caution him to slow up. Q. You have had occasion to caution him a number of times when you have been riding with him? A. Yes, sir; I believe I have during that period. There might have been times I would only go out with him twice a year and there have been times I wouldn't be with him at all because we

haven't had no business interests whatever and just merely friends the last ten years. Q. When you have gone with him you have had occasion to caution him about his fast driving? A. If he drove what I thought was faster than I wanted to drive I would caution him. Q. And you did caution him, did you? A. Well, I suppose I have; yes, sir, I might say that I have.''

The evidence shows that respondent came to California three days before the accident. The day after he arrived he took Mr. McKinley for a drive on Wilshire Boulevard in the city of Los Angeles. On the second day he took him to the city of Santa Ana. Earlier on the day of the accident he drove appellants to a funeral in Los Angeles. On none of these occasions did he drive "fast" nor was he warned as to the speed at which he was traveling.

Mr. McKinley testified concerning the trip to Fullerton, prior to reaching the place of the accident, as follows: ''We left Los Angeles I should say about between four and four-fifteen, left the Rex Arms for Fullerton, and after we got out at the edge of town Mr. Dalton speeded up his car there until the speedometer would show from 50 to 60 miles an hour, and I cautioned him two or three times on the way out that he hadn't better drive so fast as he had done heretofore when I had ridden with him also.'' It was stipulated that Mrs. McKinley's testimony, if given, would be to the same effect.

Expressions similar to those used by Mr. McKinley that respondent "drives fast", "drives too fast", "drove what I thought was faster than I wanted to drive", were considered by the Supreme Court in the case of *Diamond* v. *Weyerhaeuser*, 178 Cal. 540 [174 Pac. 38, 39], where it was said: ''Nor looking to the specific averment of violation of the ordinance, did the evidence sustain the charge that the automobile was being propelled at an unlawful or otherwise excessive rate of speed. The plaintiff testified that the machine was coming 'very fast'; another witness, that its speed was decreasing before it reached the milk wagon, but that it was still going 'at a good speed'. The only other witness who testified for plaintiff on the subject said that it looked to him as if the automobile 'was going pretty fast'. These statements are entirely too uncertain to serve as a

basis for a finding that the speed was over twenty miles an hour, or that it was in excess of the maximum rate which would be dictated by the demands of ordinary prudence. Such expressions as 'very fast', 'pretty fast', and the like, are merely relative, and their meaning and effect must depend upon the unknown factor of the witness' personal views regarding standards of speed."

The same conclusion was reached in *Rosander* v. *Market Street Ry. Co.*, 89 Cal. App. 710 [65 Pac. 536, 538], where the court said: "We need not cite further authority. Sufficient appears to indicate that the language of our own court in *Diamond* v. *Weyerhaeuser, supra*, was not the expression of a strange doctrine, nor was it an attempt to set up any new rule in this jurisdiction. Every-day experience demonstrates the lack of definite meaning in such general phrases as are under discussion. One person going at 30 miles an hour would describe his speed as a snail's pace 'crawling along'; another would describe the same speed as 'lightning fast'. From the mere descriptive words any clear conception of the speed would be unobtainable, nor would such terms even serve as the basis for intelligent speculation."

On the question of contributory negligence the trial court found "that the said plaintiff, H. G. McKinley, had knowledge of the rapid and careless manner in which the defendant generally operated his said automobile and had often protested against such operation, which protest had been disregarded by the said defendant, that despite said knowledge on the part of the said plaintiff, the plaintiff and his wife continued to go as guests in the defendant's car, which the Court finds was negligence on the part of the said plaintiffs, and which negligence the Court finds contributed proximately to the injuries suffered by the plaintiff Marie L. McKinley".

From the authorities cited it is evident that this finding cannot be supported by the testimony that respondent drove his automobile "fast", or "too fast", in Montana. The finding must derive all of its support from the testimony of appellants, already quoted, concerning the particular ride in which Mrs. McKinley received her injury.

There is a total lack of evidentiary support of that portion of the finding to the effect that Mr. McKinley had knowledge that respondent *generally* operated his automobile in a rapid and *careless* manner. Proof that a driver operated his car at a speed of fifty miles per hour during a portion of a particular trip does not prove that he *generally* drove at such a speed.

An analysis of the record has satisfied us that respondent did not drive any material portion of the distance between the Rex Arms Apartments in Los Angeles and the scene of the accident at a speed of fifty or more miles an hour. We are entitled to take judicial notice of the political subdivisions of the state (sec. 1875, Code Civ. Proc.), of principal and well-known streets and thoroughfares (*Varcoe* v. *Lee*, 180 Cal. 338 [181 Pac. 223]), and other matters of common and general knowledge. (10 Cal. Jur., pp. 693 to 696, and cases cited, and 707 to 712, and cases cited.) Drawing on our own knowledge supplemented by the testimony in the record, we find that the length of the entire trip which resulted in the injury to Mrs. McKinley was about twenty-two miles. The evidence in the record indicates that the minimum time consumed by the trip was one hour, making an average speed for the trip of about twenty-two miles per hour. It would follow that very little of the distance could have been traveled at fifty or more miles per hour. It is also evident that each time, excepting the last, that Mr. McKinley requested respondent to reduce the speed of the automobile he must have done so and that the greater part of the distance must have been traveled at a speed considerably less than the lawful limit of forty-five miles per hour prevailing at that time.

Mr. McKinley testified that two or three times he requested respondent to reduce his speed during the trip. He made such a request just before the accident and we presume that this was the last of the two or three times mentioned in other parts of his testimony. We have reached the conclusion that this evidence fails to support the finding "that the said plaintiff, H. G. McKinley, had knowledge of the rapid and careless manner in which the defendant generally operated his said automobile", upon which the trial court based its conclusion that the appellants were

guilty of contributory negligence. There was no evidence that respondent *generally* drove his automobile in such a manner.

The reasonable precautions which a passenger in an automobile for hire is required to use for his own safety when placed in a position of danger by his driver are fully discussed in the following cases: *Dowd* v. *Atlas Taxicab Co.*, 187 Cal. 523 [202 Pac. 870]; *Dowd* v. *Atlas Taxicab Co.*, 69 Cal. App. 9 [230 Pac. 958]; *Horney* v. *Dillingham*, 81 Cal. App. 443 [253 Pac. 970]. The same question is discussed when the passenger is a guest in an automobile not for hire, in the following cases: *Benjamin* v. *Noonan*, 207 Cal. 279 [277 Pac. 1045], *Krause* v. *Rarity*, 210 Cal. 644 [293 Pac. 62, 77 A. L. R. 1327], and *Curran* v. *Earle C. Anthony, Inc.*, 77 Cal. App. 462 [247 Pac. 236]. While the driver of a vehicle for hire is required to take the utmost care for the safety of his passengers (*Bosqui* v. *Sutro R. R. Co.*, 131 Cal. 390 [63 Pac. 682]; *Bezera* v. *Associated Oil Co.*, 117 Cal. App. 139 [3 Pac. (2d) 622]), and the driver of an automobile not for hire was, at the time of the accident, required to use slight care for the safety of his guests, the duty of the passenger and guest to take ordinary care for his own safety is the same in each instance. This being so, what was said by the Supreme Court on this subject in the case of *Dowd* v. *Atlas Taxicab Co., supra,* is applicable to the facts of the instant case.

The question of whether or not a plaintiff is guilty of negligence and whether or not such negligence contributed to his injury is usually one for the trial court or the jury. (*Shields* v. *King*, 207 Cal. 275 [277 Pac. 1043]; *Queirolo* v. *Pacific G. & E. Co.*, 114 Cal. App. 610 [300 Pac. 487].) Under this rule we could not hold the appellants *free* from contributory negligence as a matter of law, and we most certainly could not hold them *guilty* of such contributory negligence as a matter of law.

In retrying the case the trial court should bear in mind that from the evidence now in the record the only warning of danger to themselves that appellants had until just before the accident was that respondent drove his car at an excessive and unlawful rate of speed on one or two occasions

earlier on the trip. This might not necessarily convey to them a warning that he would suddenly change from a speedster to a grossly reckless driver and after having been warned of a danger he was approaching, wantonly drive his car at a speed of fifty or more miles an hour through an obstructed intersection and through a dangerous dip in the pavement and thus break the back of Mrs. McKinley.

Because a material portion of the finding upon which the trial court based its conclusion that appellants were guilty of contributory negligence is not supported by any evidence, the judgment is reversed.

Barnard, P. J., and Jennings, J., concurred.