[Civ. No. 1824. Fourth Appellate District.—May 6, 1937.]

E. M. PETERSEN, Respondent, v. PAUL PETERSEN, Appellant.

Chester O. Hansen for Appellant.

Rae B. Carter and Edmond A. Chevalier for Respondent.

MARKS, J.—Plaintiff, the father of Earl Petersen, deceased, recovered judgment in the sum of $3,500 against Paul Petersen for damages suffered by reason of the death of Earl in an automobile collision which occurred at about 11:30 o'clock P. M., June 18, 1935, on Mountain View Avenue in Fresno County.

Earl and Paul were not related. They lived together in a house about four miles easterly from the city of Selma in Fresno County. Appellant, Paul Petersen, owned a 1931 model A Ford roadster. At about 11 o'clock P. M. on June 18th the two young men saw a fire burning at a considerable distance to the west of their home and decided to go to it in appellant's automobile. They started, with Earl (deceased) driving, and proceeded westerly to State Highway No. 99, on which they turned northerly and proceeded a distance of not more than half a mile. Their course up to this point is established by the undisputed testimony of appellant. The evidence next shows this automobile in collision with a Chevrolet standard coupe at a point on Mountain View Avenue about one-half mile east of Highway No. 99.

Appellant testified that he suffered complete amnesia; that from the time and place where the deceased, Earl Petersen, was driving the Ford, with its headlights illuminated, northerly on Highway No. 99, he remembered nothing until he recovered consciousness in a hospital after the accident. His counsel suggests he suffered "traumatic amnesia" which covered a space of time preceding the accident and for some time after it had happened.

It is assumed by counsel, and probably correctly, that the Ford was driven northerly on Highway No. 99 to the intersection with Mountain View Avenue; that it was turned east on Mountain View Avenue on which street it proceeded to the place of the collision.

Mountain View Avenue had an oiled surface in its center about twelve feet wide. At the place of the collision its shoulders were soft, having been used as turning spaces by farmers of adjacent lands. In turning from Highway No. 99 onto Mountain View Avenue a traveler would first cross the Southern Pacific Company's right of way. In proceeding east he would ascend a grade, described by the witnesses as

a hill. From the crest of this hill the roadway descends for about one hundred fifty feet. The grade from the east end of this slope, west to its crest, is about 8 per cent.

The only eye-witness of the collision who testified at the trial was Carl DeBrum, the driver of the Chevrolet coupe involved in the collision. He testified that the night was clear with the moon shining; that he was proceeding westerly on Mountain View Avenue at a speed of from thirty-five to forty miles per hour with his car principally on his own right-hand side of the road; that the headlights of the Chevrolet were illuminated and in good working order; that when he reached the foot of the grade he suddenly saw some object on the road in front of him which he first thought was an animal, probably a horse; that instantaneously thereafter the collision occurred; that the two automobiles came together head on; that the gasoline in the fuel tank situated under the cowl of the Ford immediately burst into flames; that he saw the driver of the Ford rise up behind the steering wheel on its left-hand side and fall out of the door on the left or northerly side of the car; that he called out to this man to get away from the fire and that the man crawled to the northerly side of the road towards a vineyard; that he himself crawled east beyond his Chevrolet to escape from the fire; that within a short time two men and a woman came to the scene of the accident and carried him into an alfalfa field on the south side of the road; that he told them of the man who had fallen from the Ford and had crawled towards the vineyard. DeBrum was positive that none of the lights of the Ford were illuminated.

Two of the three persons mentioned in the testimony of DeBrum testified at the trial. They were attracted to the scene of the accident by the light of the flames from the burning gasoline shooting high in the air. They found DeBrum and carried him into the alfalfa field. They also found appellant, Paul Petersen, lying on the ground in the vineyard on the north side of the road about opposite the left door of the Ford, inside of which its driver would have been sitting. They carried him further into the vineyard to get him away from the heat. One of them testified that appellant, in reply to the question, ''Couldn't you see that fellow coming?'' said, ''Yes, but I had no lights.'' Both these witnesses testified that between ten and fifteen feet to the rear of the Ford

there was a large pool of fresh cylinder oil near the center of the road, around which were broken parts of the Ford; that a Chevrolet hub cap was on the road about five feet to the rear of the Ford. The Chevrolet lost its front hub caps in the collision.

The two men saw a human hand projecting above the center portion of the left half of the seat of the Ford. They approached the Ford and saw the body of deceased in it. His hips were on the right half of the seat with his body slumped to its left so that his head, shoulders, one arm and the hand were behind the steering wheel with his legs extended to the extreme right front of the floor boards of the car. Deceased was either killed in the collision or was burned to death in the fire.

■ Deceased was a guest of appellant and the judgment can only be sustained upon proof of appellant's wilful misconduct. (Sec. 141¾, California Vehicle Act; *Meek* v. *Fowler*, 3 Cal. (2d) 420 [45 Pac. (2d) 194].)

Appellant urges two grounds for reversal of the judgment; first, that one of the instructions given by the trial judge was prejudicially erroneous; and, second, that there was no proof of wilful misconduct on his part.

■ The challenged instruction is as follows:

"You are instructed that if you should find that Paul Petersen was guilty of wilful misconduct in the driving of his automobile which proximately contributed to the collision, and that the defendant, Carl DeBrum, was not negligent in the driving of his automobile, then it will be your duty to find for the plaintiff against the defendant, Paul Petersen, and in favor of the defendant, Carl DeBrum. On the other hand, you are instructed that if you should find that Carl DeBrum was guilty of negligence in the driving of his automobile, which proximately contributed to the collision, and that Paul Petersen was not guilty of wilful misconduct in the driving of his automobile, then it will be your duty to find for the plaintiff against the defendant driver, Carl DeBrum, and in favor of the defendant driver, Paul Petersen. If, however, on the other hand, you should find that the defendant driver, Paul Petersen, was guilty of wilful misconduct in the driving of his automobile, which proximately contributed to the collision, and that the other defendant, Carl DeBrum, was also guilty of negligence in the driving of his automobile which proxi-

mately contributed to the collision, then it will be your duty to find for the plaintiff and against the two defendant drivers, Paul Petersen and Carl DeBrum.''

Appellant argues that in this instruction the trial court, in effect, informed the jury that he was in fact driving the Ford at the time of the collision. This was one of the controverted facts in the case. Appellant maintained at the trial, and still maintains here, that deceased was driving the Ford at the time of the collision. The only evidence supporting this argument is that of appellant himself, to the effect that deceased was driving up to the time of appellant's period of amnesia; and that appellant had a scar on his chest of the shape and size of a rear view mirror which was attached to the right of the center of the dash of the Ford where it joined the windshield. The wound causing this scar was received in the collision.

Opposed to the foregoing evidence is the positive testimony of DeBrum that appellant was driving the Ford; that he saw him rise up behind the steering wheel at the impact and fall through the left door of the car to the road. There is also the undisputed evidence of two witnesses that appellant was found lying in the vineyard opposite the left door of the Ford. Further, there is the evidence of the position of the body of deceased clearly indicating that he was occupying the passenger's seat and not the driver's. It would seem impossible for the force of the collision to have instantaneously shifted the positions of the two men in the small space of the Ford roadster so that at the instant following the impact the driver would be occupying the passenger's seat and the passenger would be occupying the driver's seat. Such a shift, had it occurred, would have been seen by DeBrum for it is obvious that one body would have had to have passed over the other, and DeBrum saw no such movement.

If this state of the record shows a conflict in the evidence on the question of who was driving the Ford, the challenged instruction should not have been given, as it assumed that appellant was driving the car. However, if the words, ''if he were driving'', had been inserted in the instruction in each place where the assumptions were made, it is difficult to understand how the jury could have reached any conclusion other than that appellant was driving at the time of the collision. Under the facts before us, the error in the instruction, if any,

was not sufficiently prejudicial to permit us to reverse the judgment were we inclined to do so. (Sec. 4½, art. VI, Const.)

■ Appellant seriously maintains that there is no proof of wilful misconduct on his part. He argues that there is no evidence to prove excessive speed and that the fact of the Ford having no lights illuminated, in itself is not sufficient to establish anything more than negligence or at most gross negligence.

There is no evidence from which the exact speed of the Ford may be determined. At one place in his evidence DeBrum, in referring to the Ford, used the expression, "at the terrific speed it was coming". This can be considered little more than an expression of an opinion by the witness (*McKinley* v. *Dalton,* 128 Cal. App. 298 [17 Pac. (2d) 160]), and little importance can be attached to it especially in view of his limited opportunity to estimate the speed of the Ford. From the physical facts in evidence supporting the conclusion that the collision drove the Chevrolet backwards fifteen or more feet, the jury could have concluded that appellant was driving at an unsafe rate of speed. ■ Speed in itself and alone is not sufficient to establish wilful misconduct. However, coupled with other circumstances, it may furnish an element of that offense.

We agree with appellant in his argument that, standing alone, the fact of driving on a country road on a moonlight night without headlights illuminated might not be sufficient evidence to establish wilful misconduct. It may, however, form one element of that offense. Failure to have lights, when combined with other circumstances, might constitute wilful misconduct.

■ However, speed, lack of lights and driving on the wrong side of the road are not the only breaches of the rules of safe driving committed by appellant. Mountain View Avenue, east of the point of the collision, was straight and unobstructed. The night was clear. The Chevrolet was approaching appellant from the east with headlights illuminated. Appellant admitted that he saw these lights approaching and the evidence justifies the conclusion that he should have seen them when he cleared the crown of the hill at least one hundred fifty feet away from the point of impact. Knowing that an automobile was approaching him on a comparatively nar-

row road he continued on his course without lights, at a considerable speed, on the wrong side of the road and drove squarely into the front of the other car so that the two automobiles when they came to rest, as described by one witness, were wheel to wheel and headlight to headlight.

The definition of wilful misconduct is now well settled in this state. It is thus defined in *Meek* v. *Fowler, supra*:

"It is satisfactorily defined in *Turner* v. *Standard Oil Co.*, 134 Cal. App. 622, 626 [25 Pac. (2d) 988], wherein it is declared that ' "wilful misconduct", within the meaning of this statute, may then be defined as intentionally doing something in the operation of a motor vehicle which should not be done or intentionally failing to do something which should be done under circumstances disclosing knowledge, express or to be implied, that an injury to a guest will be a probable result.' "

When we apply this definition to the facts of the instant case the conclusion follows that appellant was guilty of wilful misconduct in the operation of his car. Certainly, driving an automobile head on into another automobile, which the driver of the first car knows is approaching him, is "intentionally doing something in the operation of a motor vehicle which should not be done". That it was knowingly done may be implied from the facts. The other necessary element of wilful misconduct is present in this case, for such an act knowingly and intentionally performed, as here, must have been done under circumstances disclosing to appellant that injury to his guest would be not only a probable but a certain result.

Judgment affirmed.

Barnard, P. J., and Jennings, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 1, 1937.