[Civ. No. 10973.   First Appellate District, Division Two.—October 19, 1939.]

CARL R. HONEYMAN et al., Respondents, v. WILLIAM H. LAWRIE et al., Cross-Defendants and Appellants; LEONARD R. CALLAN, Cross-Complainant and Appellant.

J. Hampton Hoge, Hoge, Pelton & Gunther and A. Dal Thomson for Cross-defendants and Appellants.

Albert Picard and Francis McCarty for Cross-complainant and Appellant.

Raymond D. Williamson and Arthur J. Healy for Respondents.

STURTEVANT, J.—At about 11:30 P. M. on May 27, 1937, on the highway leading from Vallejo to Napa, two automobile collisions occurred. William H. Lawrie was operating an automobile owned by his wife and they were traveling northerly toward Napa. Carl R. Honeyman and his wife were traveling in the same direction approximately 150 feet behind the Lawrie car. Leonard R. Callan was driving in a southerly direction from Napa toward Vallejo. At a point about three and a half miles north of Vallejo there is a slight curve in the highway. As one stands looking north, the highway curves to the left. The roadbed is twenty-five feet wide and has a dirt shoulder on each side two feet wide. A white strip is in place marking the middle line of the road. As the Lawrie car and the Honeyman car drove toward the above-mentioned curb the Callan car traversed the curve and approached the other cars from the north. In passing, the Callan car and the Lawrie car were so operated that they side-swiped each other on the left-hand side. The Callan car

proceeded forward and struck the Honeyman car in a head-on collision. The Honeymans sued to recover damages for personal injuries sustained by each of them and for the damages caused to their car. They named as defendants Mr. and Mrs. Lawrie and Leonard R. Callan. The three defendants answered and the defendant Callan filed a cross-complaint. He named as defendants Mr. and Mrs. Lawrie and Carl R. Honeyman. Those defendants answered the cross-complaint and on the issues so framed a trial was had before the trial court sitting with a jury. The jury returned a verdict in favor of the plaintiffs Mr. and Mrs. Honeyman and it returned another verdict in favor of the cross-defendants named in the cross-complaint. Mr. and Mrs. Lawrie appealed from the judgment against all of the defendants. Leonard R. Callan appealed from both judgments. We will first discuss the appeal taken by Mr. and Mrs. Lawrie.

The first point made by these defendants is that the trial court erred in giving to the jury a certain instruction. That instruction was as follows:

"Any violation of the terms of the motor vehicle code of the state of California to be read to you, is presumptively an act of negligence, and conclusively so until rebutted by evidence that it was justifiable or excusable under the circumstances. The Vehicle Code of the state of California, so far as here pertinent, provides as follows:

" 'No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent, having due regard for the traffic on and the surface and width of the highway, and in no event at a speed which endangers the safety of persons or property.

" 'Upon all roadways of sufficient width a vehicle shall be driven upon the right half of (and as close as practicable to the right hand curb or edge) of said roadway.

" 'Drivers of vehicles proceeding in opposite directions shall pass each other to the right, and except when a roadway has been divided into traffic lanes, each driver shall give to the other at least one half of the main traveled portion of the roadway whenever possible.'

"That ends the Vehicle Code section." (Parentheses ours.) The defendants complain of the presence of the words we have enclosed in parentheses. They contend that the expression complained of is applicable only when two automobiles are

traveling in the same direction. (*Arundel* v. *Turk*, 6 Cal.. App. (2d) 162 [44 Pac. (2d) 383]; *Polk* v. *Weinstein*, 12 Cal. App. (2d) 360 [55 Pac. (2d) 588].) We think there is no merit in the complaint. The court was giving instructions in a case in which three different operators of three different automobiles were involved. The Lawrie car and the Honeyman car were going in the same direction. At least as to them the instruction was clearly applicable. In the second place these defendants have not quoted anything contained in the record which shows or tends to show that the instruction was prejudicial to them. In our examination we have not found anything indicating that the instruction, as given, was prejudicial to any one of the parties. After the jury had been selected an opening statement was made by the attorney for each of the parties. Later every eye-witness was called and examined. At no time was any contention made that any one of the three cars was or was not driven as close as practicable to its right-hand curb or edge of the highway. On the other hand, throughout the trial the plaintiffs and the defendant Callan contended that the car of the defendant W. H. Lawrie, down to the time of the collision between his car and Callan's car, was being zigzagged across the white line and that the collision occurred on the western side of the white line. The defendant Lawrie contended that Callan approached from the north at a high rate of speed, zigzagging across the white line, and collided with Lawrie's car on the eastern side of the white line. In the entire record we do not find that any other contentions were made by the respective parties. It is clear, therefore, that this court may not say the insertion of the language complained of in the instruction above set forth was prejudicial error. (*Bosqui* v. *Sutro R. R. Co.*, 131 Cal. 390, 401 [63 Pac. 682]; *Cook* v. *Los Angeles Ry. Corp.*, 169 Cal. 113, 115 [145 Pac. 1013].)

Closely allied to the point just discussed these defendants complain because the trial court refused to give several of their proposed instructions. They say the court erred in refusing to instruct that each driver was required to yield one-half of the highway, that each vehicle should have been driven upon its right half of the roadway, and that each driver was required to yield one-half of the main traveled portion of the roadway. The vice in these contentions is that an inspection of the instructions shows the court clearly covered

the identical matters which these defendants say were omitted. In that connection the instruction which immediately followed the one above set forth was as follows: ''The operator of an automobile is not necessarily exempt from liability for injuries occurring in a public street by showing simply that at the time of the accident he was running his automobile at a rate of speed and in a manner allowed by law. He still remains bound to anticipate that he may meet persons at any point on the street, and he must, in order to avoid a charge of negligence, keep a reasonably prudent look-out for them and keep his machine under such control as will enable him to avoid collisions with other persons using ordinary care and caution, and if the situation requires, he may be compelled in the exercise of ordinary care to slow up or even to stop.''

In this same connection these defendants complain because the court refused to instruct on doctrines of law under which no verdict should be rendered against them. They quote several requests. Each was a concrete application of the law to the claims made by these defendants. However, an examination discloses that the trial court gave instructions which fully covered every claim made by these defendants.

The last point made by these defendants is that the verdict was excessive. The same contention is made by the defendant Callan. The point will be discussed below.

The defendant Callan claims the trial court erred in giving the first instruction which we have set forth above. His contention is based on the same grounds and he relies on the same authorities as the other defendants. For the reasons hereinabove set forth we find no merit in his contention.

It was the theory of the defendants Lawrie that Callan approached from the north at a high and excessive rate of speed, that he zigzagged over the white line and as he was passing their vehicle he crossed the white line, side-swiped their car, proceeded forward and collided with the Honeyman car, and then continued forward and collided with the approach to a culvert. The defendants Lawrie called as a witness Sergeant Cecil Shrum. That witness testified that immediately prior to the accident he was riding with Sergeant Swallow in an automobile and was going toward Vallejo. While on the highway at a point north of the place where the accident occurred a car passed Sergeant Swallow and himself traveling forty-five to fifty miles an hour. They pro-

ceeded on their way and presently they came to a Ford car on the west side of the highway standing up against the culvert. The defendant Callan moved to strike out the testimony of the witness on the ground that his evidence did not connect the defendant Callan with the car that stood up against the culvert. Counsel for the defendants Lawrie promised to connect the testimony. The court stated it would not rule on the motion to strike until later. At this time the defendant Callan claims the ruling was erroneous. We cannot sustain that claim. At a subsequent hearing the defendant Lawrie testified the car standing up against the culvert was the car driven by the defendant Callan and the car that was involved in the collisions hereinabove described. Under these facts we cannot say the testimony was not connected.

■ As stated above the defendants Lawrie and the defendant Callan contend the verdict was excessive. The same contention was made in the trial court when they presented a motion for a new trial. That court denied the motion and its ruling on the motion must be given due weight and consideration in this court. (*James* v. *Oakland Traction Co.*, 10 Cal. App. 785, 799 [103 Pac. 1082].) ■ The amount of the verdict returned by the jury was $1500. Special damages proved by the plaintiffs, including doctor bills and repairs to the automobile of the plaintiffs, amounted to $282.36. It follows that the sum of $1217.64 was allowed as general damages for personal injuries suffered by Mr. Honeyman and Mrs. Honeyman. Mr. Honeyman contended that two of his ribs were fractured and that he suffered a marked tenderness and pain. His physician strapped him with adhesive tape. The tape remained in place three or four weeks. The doctor took X-rays which he produced at the trial. On cross-examination he testified that from an examination of the X-rays he could not state whether there was a fracture or not. He also testified that one cannot always demonstrate by looking at an X-ray whether a rib is fractured or is not fractured. In another place the doctor testified that the ribs were fractured. That evidence was not contradicted by any other testimony. Two days after the accident Mr. Honeyman resumed his labors as a bartender, and so far as the record discloses he did not lose any other time. Mrs. Honeyman sustained lacerations. There was a two-inch cut over her eye on the forehead. Three stitches were necessary to close

the wound. It left a scar one inch long. The muscles in her neck and left shoulder were pulled and strained. She suffered a contusion in the region of the right temple and of the lower chest. She also suffered lacerations and contusions of both knees. She was under the care of Dr. Baker about three and a half months. She suffered headaches for almost a year afterwards and nervousness which continued down to the time of the trial. Answering the contention made by the defendants that the verdict was excessive, we think it must be conceded the verdict was liberal but that a court may not say, as a matter of law, that it was so excessive as to indicate it was the result of passion or prejudice.

The judgment appealed from is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 18, 1939, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 18, 1939.